[L.A. No. 30784. Dec. 15, 1978.]

PRUDENTIAL INSURANCE COMPANY OF AMERICA,
Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
THOMAS WRIGHT et al., Respondents

**COUNSEL**

Adams, Duque & Hazeltine, James H. Fleming and Richard A. Haft for Petitioner.

Pillsbury, Madison & Sutro, Noble K. Gregory, Walter J. Robinson III and David R. Jackson as Amici Curiae on behalf of Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Scott & Myles and Howard J. Scott for Respondents.

Airola & Ringgold and Lowell A. Airola as Amici Curiae on behalf of Respondents.

## OPINION

**MANUEL, J.**—Petitioner Prudential Insurance Company of America (Prudential) seeks review of an order of the respondent Workers' Compensation Appeals Board (WCAB) denying its claim of lien filed against an award in favor of respondent Thomas Wright (Wright), an airline employee.

Prudential insured Wright under a salary continuation plan termed a group disability policy which would pay to Wright monthly payments in the event of disability. The policy provided that such payments would be reduced by the "aggregate amounts of benefits . . . which for that month, he receives or would be entitled to recover upon timely presentation of claim therefor . . . for loss of time on account of disability due to sickness or injury arising out of employment . . . under . . . any workmen's compensation law."

Wright suffered an injury in October 1975 while employed as a freight handler for American Air Lines. Pursuant to the policy, Prudential made payments to him without offset for workers' compensation benefits to which he may have been entitled. In August 1976, Wright filed an application with the WCAB, alleging the October injury was industrial in nature. Prudential filed with the WCAB a notice and request for allowance of lien seeking to recover back these payments to the extent Wright received workers' compensation benefits.

Wright was thereafter awarded temporary benefits by WCAB in the sum of $119 per week and permanent disability after termination of the temporary benefits. The original findings and award of WCAB failed to dispose of Prudential's claim, apparently because the WCAB had misplaced the claim of lien. Prudential filed a petition for reconsideration requesting a hearing to establish its claim. The WCAB concluded that it was not entitled to a lien and denied reconsideration.

Prudential contends that it is entitled to a lien because (1) it furnished benefits pursuant to a group disability policy within the meaning of Labor Code section 4903.1, and (2) it furnished living expenses to Wright within the meaning of Labor Code section 4903, subdivision (c). We reject these contentions and affirm the decision of the WCAB.

The Legislature has addressed the matter of payment and assignment of compensation claims in chapter 1, part 3, division 4 of the Labor Code. We consider the sections here relevant. Section 4900 provides that "[n]o claim for compensation, except as provided in Section 96, is assignable before payment, but this provision does not affect the survival thereof." Section 4901 prohibits any claim for compensation or compensation awarded being "taken for the debts of the party entitled to such compensation except as hereinafter provided." Section 4903 provides for the allowance of several classes of lien claims including liens for "[t]he reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury" (§ 4903, subd. (c));[1] and section 4903.1 provides that a lien may be granted representing benefits paid or services provided to alleviate the effects of that industrial illness or injury either where there has been a claim for self-procured medical costs in what has been determined to be an industrial injury or illness (§ 4903.1, subds. (a), (b))[2] or where there has been a disposition of the case by a compromise and release agreement to which the lien claimant does not agree (§ 4903.1, subd. (c)).

---

[1]Section 4903, subdivision (c) provides: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (g) of this section. If more than one such lien be allowed the appeals board may determine the priorities, if any between the liens allowed. The liens which may be allowed hereunder are as follows:

". . . . . . . . . . . . . . . . . . . . . .

"(c) The reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury."

[2]Section 4903.1 provides: "The appeals board, before issuing its award or approval of any compromise of claim, shall determine, on the basis of liens filed with it, whether any benefits have been paid or services provided by a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract, and its award or approval shall provide for reimbursement for benefits paid or services provided under such plans as follows: (a) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, but denies the applicant reimbursement for self-procured medical costs solely because of lack of notice to the applicant's employer of his need for hospital, surgical, or medical care, the appeals board shall nevertheless award a lien against the employee's recovery, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care service plan, a group disability policy, a self-insured employee

There is no question that the parties herein had the right to contract that disability payments under the insurance policy should be reduced by the amount of workers' compensation allowed by the act. (Lab. Code, § 3750 et seq.) ■ However, the chapter on the payment of claims was intended to remove workers' compensation awards from the operation of the usual remedies available to creditors, to limit and regulate the kinds of debts for which liens are allowed, and to insure the award is available to the injured employee for his recovery and rehabilitation. (*Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196-197 [113 Cal.Rptr. 206, 520 P.2d 1022]; cf. *Department of Mental Hygiene* v. *Industrial Acc. Com.* (1960) 183 Cal.App.2d 832, 834-835 [7 Cal.Rptr. 257]; see *Pacific E. Ry. Co.* v. *Bonding, etc. Ins. Co.* (1921) 55 Cal.App. 704 [204 P. 262]; 2 Hanna, Cal. Law of Employees Injuries and Workmen's Compensation (1973) § 17.07 [4][a].) Accordingly, to assert a lien against Wright's workers' compensation award for the overpayment of disability benefits, Prudential must show that not only was its claim a valid debt, but that such debt is within one of the classes enumerated by section 4903 for which a lien can be lawfully imposed (*Ogdon* v. *Workmen's Comp. Appeals Bd., supra,* at p. 197; *Los Angeles* v. *Industrial Acc. Com.* (1926) 76 Cal.App. 639 [245 P. 796]; *Glass Containers, Inc.* v. *Ind. Acc. Com.* (1953) 121 Cal.App.2d 656, 660 [264 P.2d 148]), or was otherwise provided for under section 4903.1.

■ We have no difficulty rejecting Prudential's contention that it is entitled to a lien pursuant to section 4903, subdivision (c) for payment of living expenses. It was held in *Rowland* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 448, 451 [136 Cal.Rptr. 1], when a disability insurer sought a lien for excess benefits paid where the injury arose out of the insured's employment, that "[t]he purpose of section 4903, subdivision (c) is to protect persons who advance credit or loan money to dependents for necessary living expenses. It is not intended for the benefit of a debtor who pays a debt legally owing under a contractual obligation." Prudential

welfare benefit plan, or a hospital service contract. [¶] (b) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, and makes an award for reimbursement for self-procured medical costs, the appeals board shall allow a lien, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract. [¶] (c) When the parties propose that the case be disposed of by way of a compromise and release agreement, in the event the lien claimant does not agree to the amount allocated to it, then the referee shall determine the potential recovery and reduce the amount of the lien in the ratio of the applicant's recovery to the potential recovery in full satisfaction of its lien claim."

had such an obligation to Wright under its policy. It made the monthly payments not under any requirement of the workers' compensation laws, but in satisfaction of existing or potential liabilities. Consequently, Prudential is only in the position of a general obligor.

■ We also conclude that Prudential has no right to a lien under the provision of section 4903.1. That section became law after our decisions in *Kaiser Foundation Hosp. v. Workmen's Comp. Appeals Bd. (Keifer)* (1974) 13 Cal.3d 20 [117 Cal.Rptr. 678, 528 P.2d 766] and *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]. In *Keifer,* we determined that the WCAB's practice of compromising otherwise proper medical liens in settlement situations was beyond the board's statutory authority, its discretion being limited to deciding whether claim was reasonable in light of the medical services rendered. In *Silberg,* we held an insurance company providing nonoccupational accident and sickness coverage liable in damages where it refused its policy holder medical care when it appeared the insured might be entitled to workers' compensation benefits. A year after these decisions, the Legislature enacted section 4903.1: subdivision (c) empowering the WCAB to reduce certain lien claims in settlement situations, and subdivisions (a) and (b) to ensure that a policy holder, plan member or contractee received medical care, by permitting a lien remedy for "medical costs" to the extent of "benefits paid or services provided" for the "effects of an industrial injury or illness," "by a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital services contract."

Prudential argues that to interpret the statute to limit allowable liens to medical costs, is contrary to its language and does not give effect to the intent of the Legislature. Prudential urges that as provisions making reference to "specified" liens were dropped before the bill became law, and as in the present form the statute states merely that the WCAB shall determine if benefits have been paid, the Legislature intended that reimbursement should be allowed without restriction as to the type of benefit received where there is a settlement (§ 4903.1, subd. (c)), or where an award for self-procured medical costs is made, or is denied solely because of lack of notice to the applicant's employer of the need for medical care (§ 4903.1, subds. (a) and (b)).

Prudential's interpretation of the statute is not supported either by its history or its language. Section 4903.1, subdivision (b), under which

Prudential seeks to assert its claim, provides for a lien "when the referee issues an award finding that an injury or illness arises out of and in the course of employment, and makes an award for reimbursement for self-procured medical costs. . . ." Obviously, the phrase "makes an award . . . for self-procured medical costs" can be used either as a qualifying phrase or as an indication of the type of lien the Legislature sought to permit; that is, whether any benefits provided by a designated policy or plan can be the subject of a lien where there is an award for self-procured medical costs, or whether any such provider of medical benefits is entitled to a lien for these payments where there has been an award for medical costs.

The legislative history of section 4903.1 resolves this apparent ambiguity. In drafting Senate Bill No. 573 (later § 4903.1), it is clear the Legislature intended to provide prompt medical treatment for those suffering an injury or illness in *Silberg* situations, i.e., where there is questionable liability because it is uncertain whether such injury or illness was compensable under workers' compensation. The bill was originally written to *compel* medical benefit providers to render such benefits or services in circumstances where liability was unclear. Before it was amended, the Legislative Counsel comment read: "This bill would require such policies and plans [health care service plans, disability insurance policies, self-insured employee welfare benefit plans, and nonprofit hospital service plans] which contain provisions excluding or reducing benefits [for injuries or illnesses arising out of or in the course of employment or which are compensable under the workers' compensation laws] to pay for, regardless of the terms of such provisions, specified services rendered the insured or plan member until such time as the Workmen's Compensation Appeals Board determines the injury or illness to be compensable under the workers' compensation law."

The "specified" services whose payment was to have been made mandatory by the sections governing health care service plans (proposed Gov. Code, § 12532.25), group disability policies and self-insured employee welfare benefit plans (proposed Ins. Code, § 10720.96), and hospital service contracts (proposed Ins. Code, § 11512.9), were medical services. Since the bill dealt with health care services whether provided directly through plans or by indemnity payments, group disability policies and self-insured employee welfare benefit plans were included with the other health care plans to the extent they provided medical benefits.[3]

---

[3]Some group disability policies and self-insured employee welfare benefit plans which are approved as "voluntary plans" under Unemployment Insurance Code sections

Rather than adopting such detailed provisions, the Legislature enacted only section 4903.1 of the initial bill. This section did not require mandatory payment, but relied on *Silberg* to insure compliance, rewarding cooperating medical benefit providers with a lien recovery for any excess benefits in addition to their other remedies. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 588 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242].) Accordingly, subdivisions (a) and (b) limit such lien remedy to those situations where there are self-procured medical costs, i.e., where the worker, rather than his employer, is otherwise bearing his own medical expenses. Thus, the section 4903.1 exception to the section 4902 prohibition against liens promotes the policy of the workers' compensation laws by insuring medical aid to the injured or ill employee where that employee is without statutorily required medical assistance.

This linkage of the allowance of liens for benefits and services to the disposition of claims for reimbursement for self-procured medical costs is a clear indication of the Legislature's purpose of restricting such liens to claims for medical costs incurred by the applicant under whatever plan gave him the benefits.[4] The statute grants a lien for benefits rendered under a group disability policy only if the employee incurred such expenses. Yet, in the instant case, Prudential's claim and the award for self-procured medical treatment are wholly separate and unrelated matters. If the employer or his carrier had promptly provided medical care, unquestionably, Prudential would not have been entitled to such lien under section 4903.1, subdivision (b). It would be unreasonable, therefore, to treat the fortuity of a self-procured medical claim as a trigger to claim for a lien for disability indemnity. If the intent were to make the

---

3251-3272, are required to provide some hospital benefits as part of the plan. (See Unemp. Ins. Code, §§ 2801 and 3254, subd. (a).) Moreover, other group disability policies and self-insured employee welfare benefit plans voluntarily elect to provide some medical assistance in addition to disability indemnity.

Accordingly, proposed Insurance Code section 10270.96 stated: "[w]hen a group disability policy or self-insured employee welfare benefit plan *providing for the payment of hospital, surgical, or medical services* contains [a]n exclusion or reduction in payment of benefits for [an] . . . injury . . . arising out of or in the course of one's occupation . . . or [an] . . . injury for which the insured is entitled to any . . . compensation under the workers' compensation laws . . . [then] . . . upon the filing of an application . . . with the Workmen's Compensation Appeals Board, . . . benefits shall be paid under such policy or plan for disability, hospital, surgical or medical services. . . ." (Italics added.)

[4]Witkin, in volume 2 of the Summary of California Law, (8th ed.) 1978 supplement, also suggests that the Legislature's sole purpose in section 4903.1 was to provide for the

lien allowable, the Legislature would not have imposed such a precondition. Clearly, the Legislature did not mean the award with respect to self-procured medical costs to be the triggering event for a claim on a salary continuation plan unconnected to the furnishing of such medical care. Were Prudential's view to prevail, it would significantly expand the liens enforcible against compensation awards in contravention of the protection afforded by section 4901 and would conflict with the requirement of section 3202 that the code be liberally construed to extend workers' compensation benefits for the protection of persons injured in their employment.

The order denying Prudential's claim of lien is affirmed.

Bird, C. J., Tobriner, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

I agree Prudential is entitled to no lien pursuant to provisions of Labor Code section 4903. (See *Rowland* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 448 [136 Cal.Rptr. 1].) However, this does not mean Prudential is not entitled to a statutory lien pursuant to section 4903.1, subdivision (b), for its excess payments under the policy. In concluding no lien is available, the majority ignore a literal reading of the statute to reach a result they believe desirable. As will be demonstrated, the meaning they give the statute is not only contrary to established rules of law but fails to accomplish the happy solution they envision.

As the majority acknowledge, Thomas Wright contracted—and his group disability insurance premiums were so adjusted—to receive in the event of his disability insurance benefits reduced by what he could recover in workers' compensation benefits for that same disability. (See Lab. Code, § 3750 et seq.) However, Prudential paid Wright his full insurance benefits. When Wright applied for workers' compensation benefits, Prudential sought to recover its overpayments. The challenge is

---

disposition of medical lien claims. The supplement states in section 218A on page 72: "Lab.C. 4903.1, added in 1975, requires the Appeals Board to award a lien for *medical* benefits paid and services provided by health care service plans, group disability policies, self-insured employee welfare benefit plans, or hospital services contracts, even when the employer is not required to pay for such benefits or services because the employee fails to give the required notice. (See Supp., *supra*, § 165.) (Lab.C. 4903.1(a) and (b).)" (Italics added.) (See also 2 Witkin, Summary of Cal. Law (8th ed. 1976 supp.) § 218A, pp. 44-45.)

not to Wright's acknowledged liability to Prudential for overpayments, but rather to Prudential's assertion of a lien in effecting its rightful recovery.

The majority seek to avoid the clear language of section 4903.1 based on their version of legislative intent arising from circumstances before and prevailing at the time of its 1975 enactment. (Stats. 1975, ch. 1109, § 1.) They rely on two decisions of this court which they claim are relevant to an understanding of section 4903.1.

Prior to 1974 WCAB had developed a practice of reducing for "equitable reasons" otherwise proper medical and hospital liens claimed pursuant to section 4903, subdivision (b), in order to facilitate or accommodate compromises and releases in those cases where the industrial nature of the claim was in dispute. In *Kaiser Foundation Hosp. v. Workmen's Comp. Appeals Bd. (Keifer)* (1974) 13 Cal.3d 20 [117 Cal.Rptr. 678, 528 P.2d 766], however, we held the WCAB lacked authority to reduce the size of such claims in lack of a lienholder's consent and upon prima facie proof the treatment rendered by the lienholder was for injury allegedly received in the course of employment. (*Id.,* at p. 23.)

The impediment imposed by *Keifer* to compromises of disputed industrial injuries is claimed to have been rectified by enactment of section 4903.1. (Stats. 1975, ch. 1109, § 1.) Authority to reduce the size of an otherwise proper lien is provided in subdivision (c): "When the parties proposed that the case be disposed of by way of a compromise and release agreement, in the event the lien claimant does not agree to the amount allocated to it, then the referee shall determine the potential recovery and reduce the amount of the lien in the ratio of the applicant's recovery to the potential recovery in full satisfaction of its lien claim." As will be seen *Keifer* and the subsequent enactment of subdivision (c) of section 4903.1 has little or no relevance to the question in issue—the legislative intent to afford to a group disability insurer a claim of lien.

The second decision of this court which is claimed to bear on legislative intent in enacting section 4903.1 is *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]. In that case a carrier had issued a policy providing for payment for medical and hospital care resulting from injuries suffered by the insured, excluding medical and hospital care expense resulting from injuries for which

workers' compensation benefits were available. When the insured was injured in an accident of a disputed industrial nature, the insurer refused to make payments pending resolution of the insured's claim for workers' compensation benefits. Two years later a compromise was effected in which there was a partial allowance of a hospital's claim of lien. A majority of this court held the insurer had exercised bad faith in withholding payment of medical benefits pending resolution of the industrial nature of the injury, stating: "There is no question that if [insurer] had paid the hospital charges and it was ultimately determined workmen's compensation covered the injury, [insurer] could have asserted a lien in the workmen's compensation proceeding to recover the payments it had made and it would have been entitled to payment from the proceeds of the award. (Lab. Code, § 4903, subd. (b); . . .)" (*Id.*, at p. 461.) Judgment for the insured was affirmed insofar as it awarded full medical expenses under the policy ($4,900), and compensatory damages ($75,000).

Following *Silberg* insurers complained of the dilemma of being required to furnish benefits to avoid liability for potential compensatory damages while their claims of lien under section 4903, subdivision (b), were later routinely denied or reduced. According to the majority, subdivisions (a) and (b) of section 4903.1 were designed by the Legislature to remedy the insurer's plight, but only insofar as liability for medical and hospital payments were involved.[1] Both subdivisions provide for lien claims by those who furnish medical and hospital services, but the right to lien is not limited to such claimants. Others who are granted an express right of lien are those who have paid benefits or provided services "for the effects of the industrial injury or illness" including benefits paid pursuant to "a group disability policy."[2]

---

[1]Subdivisions (a) and (b) of section 4903.1 provide: "(a) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, but denies the applicant reimbursement for self-procured medical costs solely because of lack of notice to the applicant's employer of his need for hospital, surgical, or medical care, the appeals board shall nevertheless award a lien against the employee's recovery, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract. [¶] (b) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, and makes an award for reimbursement for self-procured medical costs, the appeals board shall allow a lien, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract."

[2]Respondents appear to argue that before enactment of section 4903.1 a disability insurer was not entitled to lien because it did not qualify as having furnished medical or

We are unable to discern anything in *Keifer* or in subdivision (c) of section 4903.1 which aids the majority holding that group disability insurers are intended to be excluded from the provisions of section 4903.1. Although *Keifer* dealt with WCAB authority to reduce claims of liens for medical and hospital treatment, subdivision (c), which is claimed to restore to the WCAB that which was denied in *Keifer,* deals with compromise and release of lien claimants generally—not specifically with lien claimants for only medical and hospital treatment. If we are to gather any intelligence from subdivision (c) it must be that the Legislature rejected the narrow application of section 4903.1 and broadened application of subdivision (c) to accommodate compromise and release agreements affecting lien claimant mentioned in subdivisions (a) and (b).

Subdivisions (a) and (b), notwithstanding the argument that these subdivisions were adopted solely to relieve difficult situations in which medical and hospital lien claimants were placed, are even more explicit than subdivision (c) in extending the right to claim a lien to others than medical and hospital lien claimants. Both subdivisions (a) and (b), as well as the preamble portion of section 4903.1, expressly provide for filing claim of lien for benefits paid pursuant to "a group disability policy." It is argued the Legislature, in attempting to assure WCAB the power to adjust lien claims for medical and hospital insurance (see § 4903.1, subd. (c)), and knowledgeable that such policies are written by carriers also writing disability policies, intended to include as lienable payments made pursuant to any such policies only those made for medical and hospital costs.

The difficulty in stating the proposition demonstrates its absurdity. What is suggested is that we substitute the words "a medical and hospital expense policy" for the words "a group disability policy" in the statute. Even if we were authorized to make such an arrogant substitution it would render the substituted language a complete nullity, as a lien for

hospital treatment pursuant to section 4903, subdivision (b); that while insurers who provided medical and hospital treatment or reimbursement therefor were entitled to liens the WCAB had diluted such rights (e.g., *Keifer*) or rejected liens when questionable liability for payments had been resolved in favor of payment under threat of compensatory liability (e.g., *Silberg*); that section 4903.1 was enacted in response to those circumstances and therefore should be applicable *only* to those lien claimants caught up in the problems resulting in the enactment—those who might have claimed liens for medical and hospital treatment under section 4903, subdivision (b); that because payments of benefits pursuant to a group disability policy did not give rise to a lien claim *prior* to the enactment of section 4903.1, such payments do not give rise to a claim of lien *after* the enactment of section 4903.1 notwithstanding the clear language of that section.

medical or hospital expenses is *otherwise* provided for, if not in subdivisions (a) and (b) for benefits paid pursuant to "a health care service plan" or "a hospital service contract," then certainly in section 4903, subdivision (b). (See *Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, 461.)

The main thrust of the majority opinion is that subdivision (a) provides for a lien only when an employee has been denied reimbursement for self-procured medical costs solely because of lack of notice to his employer, and subdivision (b) provides for a lien only when an award of self-procured medical costs has been made, thus conditioning the operation of subdivisions (a) and (b) to only those cases when the employee has himself procured medical assistance for which he was or could have been reimbursed. In the instant case respondent Wright incurred medical costs for which he was reimbursed, thus invoking Prudential's claim of lien pursuant to subdivision (b). The majority condemn a literal reading of the statute as unreasonable in view of the happenstance of self-procured medical costs triggering a lien for group disability payments which—they claim—have no relevancy to the self-procured medical costs.

The legislative reason for not providing for a lien in those instances when an employee does not himself procure medical assistance does not appear. The majority speculate, as suggested by their construction of section 4903.1, that liens are authorized only when medical and hospital expenses have been self-procured and then only in the amount of such expenses. We can further speculate that because payments made under a disability policy could be deemed to have provided a means—perhaps the only means—by which a disabled employee could procure medical assistance or hospital services, a lien is warranted. In any event, subdivisions (a) and (b) provide claims of liens for disability insurers and the fact disability payments may not be directly tied to medical or hospital expenses cannot be deemed to be a legislative inadvertence or oversight when the same claim of lien is provided for "a self-insured employee welfare benefit plan." (See fn. 1.) Such a benefit plan, like a disability insurance plan, makes payments which are not directly related to an employee's medical needs or costs. The majority fail to demonstrate the Legislature did not really intend to afford a right of lien in favor of *either* a disability insurer or a self-insured employee welfare plan, *both of which* are *expressly* provided for on *three* occasions in section 4903.1.[3]

---

[3]The majority's conclusion would further require a conclusion section 4903.1 does not authorize a claim of lien *except* when a claimant can qualify under subdivisions (a) or (b).

Although WCAB might have anticipated in the circumstances prevailing in 1975 the enactment of remedial statutory provisions different from those appearing in section 4903.1, neither it nor this court can construe that section merely to fit the mold of what was anticipated. " 'While courts are no longer confined to the language [of the statute], they are still confined by it. Violence must not be done to the words chosen by the legislature.' (Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Columb.L.Rev. 527, 543.) A standard of conduct prescribed by a statute would hardly command acceptance if the statute were given an interpretation contrary to the interpretation ordinary men subject to the statute would give it. 'After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him.' [Citations.] If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.] Certainly the court is not at liberty to seek hidden meanings not suggested by the statute or by the available extrinsic aids. (*In re Miller,* 31 Cal.2d 191, 198-199 . . . and cases cited therein.)" (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1].)

The majority's narrow interpretations fail to take into account broad and unambiguous language of section 4903.1. The WCAB is first commanded to determine whether "any" benefits have been paid—a determination not limited to benefits for medical or hospital care—from sources, including group disability policies, not limited to health care plans and hospital service contracts. If conditions are satisfied authorizing

---

We do not here have to consider such issue, because Prudential's claim qualifies as a lien pursuant to subdivision (b). However, the section read in its entirety does not provide as claimed by the majority. First, it authorizes claims of liens by those who have paid benefits or provided services, including benefits paid pursuant to a group disability policy. Then by the "as follows" language *certain* of such lien rights are qualified as provided in subdivisions (a), (b) and (c). Subdivision (a) qualifies lien rights when the employee is denied self-procured medical costs solely because of lack of notice to the employer. Subdivision (b) qualifies lien rights when an award for self-procured medical costs has been made. There is no basis for concluding there are no lien rights *except* when subdivisions (a) or (b) are operative as, for instance, when the employee has *no* self-procured medical costs. If subdivisions (a) and (b) were intended to state the only conditions under which a lien could be asserted, then the first paragraph of section 4903.1 serves absolutely no purpose. By eliminating it, subdivisions (a), (b) and (c) become self-operative as held by the majority—deleting from each subdivision, of course, the language "a group disability policy" as further held by the majority. Surely we cannot conclude our Legislature is so inept a constructionist as is required by the majority holding.

recognition of *any* claim of lien, subdivisions (a) and (b) command WCAB to entertain liens filed by disability insurers or employee welfare benefit plans in the same manner as those filed by a health care service plan or a hospital service contract. Finally, liens are to be recognized for benefits paid or services provided for the "effects" of the industrial injury or illness—a broader concept than, as held by the majority, for benefits paid or services rendered merely for medical or hospital care.

The wholesale assault on clear and unambiguous language of section 4903.1 constitutes, in language of Justice Frankfurter, more violence than can be countenanced. The problem, if in fact there is one, must be addressed to the Legislature.

Finally, aside from the majority's strained statutory construction to reach what it deems to be a desirable result, that result will not be achieved. The majority concern here is obviously to insure a disabled worker will be immediately protected by a disability insurance carrier in an instance when question might be raised as to the industrial nature of his disability. This court grappled with that problem in *Silberg*, concluding an insurer exposed itself to further liabilities if it failed to act in good faith in anticipation of escaping liability should the accident later be deemed to be industrial in nature. The court justified the imposition of responsibility to make immediate payment on the ground that had the insurer made payments it was later determined it was not required to make, it "could have asserted a lien in the workmen's compensation proceeding . . . and it would have been entitled to payment from the proceeds of the award." (*Silberg* v. *California Life Ins. Co.* (1974) *supra,* 11 Cal.3d 452, 461.)

The majority now hold the insurer is entitled to no lien, thus imposing on the insurer the same dilemma it faced prior to enactment of section 4903.1. Today's decision, moreover, destroys what the majority sought to accomplish in *Silberg*—certainly we can no longer impose on an insurer a duty to make timely disability payments to a disabled employee pending resolution of an industrial award against which the insurer can assert no lien should it be determined the insurer had no liability.[4] But the real loser, of course, is the disabled employee who must now look *only* to workers' compensation benefits which, when the industrial nature of the injury is disputed, may be long delayed.

---

[4]If we would impose such a duty it must be obvious insurers could no longer afford to provide such policies.

The order denying Prudential's claim of lien should be reversed and the cause remanded for further proceedings.

Mosk, J., and Richardson, J., concurred.

Petitioner's application for a rehearing was denied January 24, 1979. Mosk, J., Clark, J., and Richardson, J., were of the opinion that the application should be granted.