[Civ. No. 50681. Second Dist.. Div. Three. Feb. 28. 1979.]

KAISER FOUNDATION HOSPITALS et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
THOMAS J. BRENNAN et al., Respondents.

COUNSEL

Thelen, Marrin, Johnson & Bridges, James W. Baldwin, Robert W. Loeffler and W. Ernest Mooney for Petitioners.

Charles L. Swezey, Frank H. Batlin, Philip M. Miyamoto, Thomas J. McBirnie, William B. Donohoe, Dexter W. Young, Richard W. Younkin and Lee R. Mathis for Respondents.

OPINION

COBEY, Acting P. J.—Petitioners Kaiser Foundation Hospitals and Southern California Permanente Medical Group (Kaiser) contend that respondent Workers' Compensation Appeals Board (WCAB) erred in charging part of a fee awarded an injured worker's attorney to Kaiser's recovery on its lien claim for medical services (see Lab. Code, §§ 4600, 4903, subd. (b)).[1]

---

[1]Hereinafter, unless indicated to the contrary, all references will be to the Labor Code.

## I

The injured worker herein, respondent Thomas J. Brennan, filed a workers' compensation claim for a cumulative trauma injury (see Lab. Code, § 3208.1) alleging that while employed from May 22, 1970, through May 22, 1975, by respondent County of Los Angeles (County) and the Office of the Los Angeles County Superintendent of Schools (County Schools)[2] he sustained injury arising out of and occurring in the course of said employment to his heart as the result of "stress, strain and physical exertion." Brennan also filed a claim alleging a specific injury on May 22, 1975 (see § 3208.1) in that the "stress, strain and physical exertion" of his employment on that date resulted in injury to his heart which arose out of and occurred in the course of employment.[3] On May 22, 1975, Brennan sustained a myocardial infarction which resulted in hospitalization and substantial disability.

After the infarction on May 22, 1975, Brennan was hospitalized for seven days at the Queen of Angels Hospital. On May 29, 1975, Brennan was transferred to a Kaiser facility. In January 1976, County paid Kaiser the sum of $2,197 for hospital and medical services provided Brennan during the period May 24 through October 17, 1975. In March 1976, Kaiser filed a lien in the amount of $3,440.65 in the workers' compensation proceedings pursuant to sections 4600 and 4903, subdivision (b) for the cost of medical services it provided Brennan during the period October 24, 1975, through February 1, 1976, and for the costs of Brennan's initial hospitalization at Queen of Angels Hospital which were paid by Kaiser under the terms of "Kaiser Foundation Health Plan."[4]

[2] During the pertinent times County was legally uninsured and County Schools was insured for workers' compensation liability by respondent State Compensation Insurance Fund (State Fund).

[3] During the course of the workers' compensation proceedings, Brennan also asserted the industrial injuries resulted in compensable injury to his psyche. This part of Brennan's claim does not appear relevant here.

[4] In its supplemental brief Kaiser admits that its lien comes within the terms of section 4903.1. Section 4903.1 applies to liens concerning "benefits . . . paid or services provided by a health care service plan, a group disability policy, a self-insured employer welfare benefit plan, or a hospital service contract." (See *Prudential Insurance Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 776 [151 Cal.Rptr. 537, 588 P.2d 239]; *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (Gregory)* (1978) 87 Cal.App.3d 336, 359-361 [151 Cal.Rptr. 368].) While Kaiser's lien herein was not reduced under the provisions of section 4903.1, subdivision (c) (see *Gregory*, at pp. 353-358), this admission by Kaiser distinguishes it from a medical lien claimant who has provided medical services on a private basis and not pursuant to a medical health care plan. (See *Haskins v. City of Chico* (WCAB) en banc opinion, 1977) 42 Cal.Comp.Cases 622.)

Medical evidence presented by Brennan supported his contention that both the specific injury and the cumulative trauma injury were compensable industrial injuries. County's medical evidence acknowledged industrial causation of the specific industrial injury in that Brennan's physical work activities on May 22, 1975, contributed to the precipitation of the infarction. Based upon the medical opinions County and County Schools obtained, they maintained, however, that there was no cumulative trauma injury on an industrial basis and that Brennan's continuing disability was related to his nonindustrial underlying coronary arteriosclerotic heart disease.

County apparently accepted the industrial basis of Brennan's infarction of May 22, 1975, as it paid part of the Kaiser bills (as indicated above) and also paid Brennan temporary disability benefits.

On October 26, 1976, the workers' compensation judge issued a recommended rating as to the specific injury of 93¾ percent permanent disability.

In November 1976 Brennan and County entered into a "joint compromise and release"[5] in the gross amount of $54,000 and submitted it to the workers' compensation judge for approval.[6] The settlement provided for payment of Kaiser's lien in its full amount.

On December 8, 1976, the judge issued an order approving joint compromise and release (Order). The Order provided for payment of Kaiser's lien of $3,440.65 in full *less* $350 to Brennan's attorney.[7]

Kaiser, represented by legal counsel, then timely petitioned the WCAB for reconsideration. Prior to the petition for reconsideration, Kaiser's only participation in this matter had been to file its lien. It had not actively joined in the litigation of Brennan's claim.

[5]County Schools and State Fund were not parties to this settlement.

[6]"No release of liability or compromise agreement is valid unless approved by the appeals board or referee." (§ 5001.)

[7]On December 23, 1976, the judge issued a findings and order on the cumulative trauma claim that Brennan "did not sustain injury arising out of and occurring in the course of his employment from May 22, 1970 through May 22, 1975." The judge accordingly ordered that Brennan "take nothing . . . by reason of his claim." This decision had no effect on the settlement but only concerned the liability of County Schools and State Fund.

The WCAB denied reconsideration and upheld the charging of a portion of the fee of Brennan's attorney to Kaiser.

## II

■ Kaiser now seeks annulment of the WCAB's decision on the sole ground that the WCAB does not have the power to charge attorneys fee against its lien. We observe that in its petition for reconsideration Kaiser challenged neither the amount of the fee charged against it, the manner in which the fee was computed, nor the procedure followed by the judge in assessing the fee. Thus, these questions are not properly before us for consideration. (§ 5904; *Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 456 [96 Cal.Rptr. 471, 487 P.2d 1039]; *Johns-Manville Products Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 740, 747 [151 Cal.Rptr. 215]; *Morgan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 710, 713, fn. 1 [149 Cal.Rptr. 736].)

## III

We find *Quinn* v. *State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761] and *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd. (California School for the Deaf)* (1978) 83 Cal.App.3d 413 [148 Cal.Rptr. 54] controlling here.

*Quinn* expressed the equitable doctrine that "one who expends attorneys' fee in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Quinn, supra,* 15 Cal.3d at p. 167.)

Of course, *Quinn* involved a lien filed pursuant to section 3856 by an industrial carrier in the civil action filed by the injured worker against various third party tortfeasors. There the carrier sought to recoup the workers' compensation benefits paid to the injured worker. The injured worker received a favorable judgment and the worker's attorneys fee was apportioned between him and the carrier as the carrier had not participated in the litigation other than filing a lien.

*Quinn* held that the principle of equitable apportionment of attorneys fees was incorporated into section 3856. *Quinn* recognized, though, that the circumstances present there "might well" constitute an appropriate situation for the application of the rule of equitable apportionment of

attorneys fees even without resort to section 3856. (*Quinn, supra,* 15 Cal.3d at pp. 168-169.)

In *California School for the Deaf* the petitioner was a medical lien claimant, which had provided medical services to an injured worker and which sought reimbursement by filing a lien in the workers' compensation proceedings.[8] There, as here, the lien claimant did not actively participate in the litigation process other than the filing of a lien. *California School for the Deaf* upheld the WCAB's equitable apportionment of the injured worker's attorneys fees between the medical lien claimant and the injured worker after the injured worker had successfully litigated the claim and received an award which included payment to the medical lien claimant of its lien in full. The court expressly held that the WCAB had the power to apply this equitable doctrine. (*California School for the Deaf, supra,* 83 Cal.App.3d at p. 418.)

Two possible distinctions can be suggested between *California School for the Deaf* and the present case. First, *California School for the Deaf* involved a finding and award while here a compromise and release is involved. Secondly, in *California School for the Deaf* there was a real issue of whether the medical treatment in question was related to the admitted industrial injury while here clearly at least some of the medical treatment in question was for the admitted industrial injury. We conclude that neither of these two differences prevents the board from equitably apportioning the attorneys fee.

Whether the worker's compensation claim is disposed of by compromise and release or proceeds to a finding and award does not affect the application of the principle of equitable apportionment of attorneys fees. (See *Quinn, supra,* 15 Cal.3d at p. 176, fn. 20; *Kaplan v. Industrial Indem. Co.* (1978) 79 Cal.App.3d 700, 705-706 [145 Cal.Rptr. 219]; *R. E. Spriggs, Inc. v. Industrial Acc. Com.* (1954) 42 Cal.2d 785 [269 P.2d 876].) The only difference is that in one situation the skill of the injured worker's attorney as a trial advocate is involved while in the other his skill as a negotiator comes into play. This difference is inconsequential. In both cases the medical lien claimant receives payment of his lien by reason of the

---

[8]In *California School for the Deaf* the petitioner was "Kaiser Foundation Hospitals/ Permanente Medical Group." This does not appear to be the same entity as petitioners herein.

professional skill of the injured worker's attorney. This is what is important.[9]

If the question of whether there was industrial injury is not in dispute, the equitable apportionment of attorneys fees is not necessarily precluded. There may be a question of whether the medical treatment is reasonably related to the industrial injury (see *California School for the Deaf, supra,* 83 Cal.App.3d at p. 417) or there may be some other defense to the medical claimant's lien. Even where there is no defense to the lien, equitable apportionment of fees may be in order. After all, it is still the efforts of Brennan's attorney that ensured payment of Kaiser's lien which County had apparently refused to pay. In light of Kaiser's nonparticipation in the case, in the absence of Brennan's litigation, Kaiser's lien may well have gone unpaid.

Stated otherwise, the extent to which the lien is in dispute bears on the issue of the proportion of the fee of the injured worker's attorney which Kaiser should pay but not on whether it should pay any part thereof at all. In this connection the medical lien claimant may not question the necessity of the worker's compensation litigation so long as that litigation is not sham or collusive. The fact that it is unsuccessful in increasing the benefits obtained by the worker does not make it unwarranted.

---

[9]Kaiser contends in its petition for rehearing that to allow the equitable apportionment of attorneys fees overlooks the potential conflict of interest in the worker's attorney both representing the injured worker and the medical lien claimant. We reject this contention. There exists, here, no such conflict of interest.

The attorney for the injured worker does not represent both the injured worker and the medical lien claimant. The injured worker's attorney serves only as attorney for the injured worker. The doctrine of equitable apportionment of attorneys fees as applied to the lien claimant is based upon the fact that without the efforts of the injured worker's attorney there would be no recovery to satisfy the lien.

Kaiser's lien was here allowed in full and was not reduced pursuant to the "Gregory formula" under section 4903.1. (See *Gregory, supra,* 87 Cal.App.3d 336, 359-361.) Clearly, where the medical lien claimant's lien is allowed in full there is no conflict between the interests of the injured worker and the interests of the lien claimant as *might* exist where there is an attempt to reduce the lien under section 4903.1. (As Kaiser points out, where there is an attempt to reduce a lien under section 4903.1 it is in the injured worker's interest to use the "Gregory formula" to diminish the net recovery by the lien claimant on its lien and thereby boost his own net recovery.) We do not, however, expressly or impliedly decide whether there can be equitable apportionment of attorneys fees where the "Gregory formula" has been applied to a lien. We accordingly neither approve nor disapprove those decisions of the WCAB which would appear to allow such practice. (See *Flores* v. *Ford Motor Company* (WCAB en banc opn. 1978) 43 Cal.Comp.Cases 15, writ den. 43 Cal.Comp.Cases 507; *Branco* v. *Race Street Fish & Poultry* (WCAB en banc opn. 1978) 43 Cal.Comp.Cases 10, writ den. 43 Cal.Comp.Cases 505. As to the effect of a denial of a petition for writ of review see *Gregory, supra,* 87 Cal.App.3d at p. 347.)

As the WCAB acknowledges in its supplemental brief the method for equitable apportionment of attorneys fees is as set forth in *Quinn.* The WCAB first sets the overall attorneys fee and then charges part of *that fee* to the lien claimant, here Kaiser. (See *Quinn, supra,* 15 Cal.3d at pp. 175-176.) The effect of this is *not* to increase the total fee of the injured worker's attorney but to *shift* part of that fee to the passive beneficiary in the litigation and thereby *reduce* the fee chargeable to the injured worker.[10]

Kaiser here neither challenges the reasonableness of the total fee, nor the propriety of the portion thereof charged Kaiser. Accordingly, it puts into issue only the power of the WCAB to make an equitable apportionment of Brennan's attorney's fee. This issue we resolve against Kaiser.

The decision of the WCAB is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied March 29, 1979, and petitioners' application for a hearing by the Supreme Court was denied May 30, 1979.

---

[10]But see *Kaplan v. Industrial Indem. Co., supra,* 79 Cal.App.3d at pages 705-708.