### No. 2.011.

JOSEPH S. ALEMANY, Respondent, *v.* FRANCIS S. WENSINGER *et al.* Appellants.

SALE OF PROPERTY HELD IN TRUST FOR CHARITABLE OR RELIGIOUS PURPOSES. A Court of Equity has jurisdiction to decree a sale of property held in trust for charitable or religious purposes when, in its opinion, the objects of the trust would be more effectually carried out by such sale.

IDEM.—BOND OF TRUSTEE.—A decree of sale of property held in trust for religious or charitable purposes should require from the trustee a bond, with sufficient security to be approved by the Court, for the proper application of the proceeds of the sale to the purposes of the trust, according to the directions of the decree, and reserving the authority of the Court upon proper showing to require additional security, or to appoint another trustee if circumstances make it necessary.

IDEM.—COSTS OF LITIGATION.—The costs of litigation, including reasonable fees to counsel, in a proceeding for the sale of property held in trust for religious or charitable purposes, are a proper charge on the trust fund, and should be allowed by the Court.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

Action brought by Joseph S. Alemany, Roman Catholic Archbishop of San Francisco, against the defendants, members of the congregation of Roman Catholic Germans of the City of San Francisco, to obtain a decree for the sale of certain lots, and the buildings thereon, including the Church of Saint Boniface, held in trust by him for the use of said congregation, and to apply the proceeds after paying off the indebtedness of said congregation to the purchase of another and more suitable lot and the erection thereon of a suitable church edifice and other necessary buildings; and that the lot of ground so purchased shall be conveyed to plaintiff, and shall, together with any buildings erected thereon, be held by him upon the trusts respecting the same, in all respects as the premises sought to be sold have been heretofore held and enjoyed.

Judgment was for plaintiff in accordance with the prayer of the complaint, authorizing and directing him to sell the premises therein described for the best price that in his judgment could be obtained therefor, but for not less that sixty-five thousand dollars in gold coin; and that the costs and disbursements of the plaintiff and counsel fees, not exceeding five hundred dollars, be allowed to the plaintiff out of the trust funds, and that the plaintiff pay the Court costs and disbursements of the defendants.

Defendants moved for a new trial which was denied, and this appeal is taken both from the judgment and the order denying a new trial.

The other facts are stated in the opinion.

*Geo. Cadwalader,* for Appellants.

*First*—The law of America, is essentially different from that of England. We have no *parens patrie*, and consequently no keeper of his conscience.

We have a government of laws, organic and statutory, and the organic law of the nation preserves from violation the obligation of contracts.

Section Ten of Article I of the Constitution declares that "no State * * * shall pass * * * any law impairing the obligation of contracts."

Should the judiciary of a State by a decision determine that a contract might be violated, there is no question but that an appeal would lie to the Supreme Court of the United States, and that the decision would be overruled on the ground that the sanctity of contracts provided for by the clause quoted should be as fully sustained against judicial as legislative usurpation.

Section One of Article I of our State Constitution embodies the same idea, but in different words, by declaring that " all men * * * have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property."

The emphatic words of the deed in this case should not be overlooked, declaring that " the above described lot and any building or buildings erected, or to be erected thereon, be used and employed as a Roman Catholic Church for the German Congregation of the City of San Francisco * * * exclusively forever."

Attacks upon these trust settlements sometimes come from their founders, and we can readily imagine the just indignation of the Archbishop should the founders of this trust commence a suit to reinstate themselves in the possession and ownership of the trust property, upon the ground that it had become too valuable for church property, and its contract was too close with the business houses of San Francisco, or because the Archbishop and the German Congregation had suffered the church and school houses to go to premature rack and ruin.

The rule, however, which would protect the Archbishop and his Church from such spoliation, is the same principle which must now protect the beneficiaries in this trust from the unwise assault of the respondent.

Of the charter of Dartmouth College, passed to give effect to the request of the founder, Dr. Wheelock, the Supreme Court of the United States said, in 4 Wheaton, 644: "This is plainly a contract to which the donors, the Trustees, and the Crown (to whose rights and obligations New Hampshire succeeds,) were the original parties. It is a contract made on a valuable consideration. It is a contract for the security and disposition of property. It is a contract on the faith of which real and personal estate has been conveyed to the corporation." (Willard's Equity Jurisprudence, p. 589; *Gilman* v. *Hamilton*, 16 Ill. 228, and authorities therein cited.)

*Second*—The decree affords no protection to the beneficiaries. No bonds are required from the Archbishop. The surplus remaining after the purchase of the new lot and erection of a new church is not disposed of. No security is given for the respondent at the proper time and place purchasing a new lot and building a new church, or that the title thereto will be settled as it is now. The purchase of a new lot and the building of a new church is business for the lay members of the congregation, and does not pertain to the doctrine and discipline of the Church. Not charging the Archbishop with being dishonest, it seems evident that the congregation should not be required to trust him in matters of business more than the Court would trust any other trustee.

*W. H. L. Barnes*, for Respondent.

It would seem to be admitted that the equity jurisdiction with which our District Courts are invested under the Constitution is the same as that administered in the High Courts of Chancery in England, which have repeatedly exercised such jurisdiction as is claimed in the present case for our own District Courts.

Hill on Trustees, (p. 463,) says that as a general rule, trustees of charities should never alienate the trust estate without the sanction of the Court.   It does not necessarily follow that such alienation will be treated *per se* as a breach of the trust; for, in some instances, the court has sanctioned, and has even gone so far as to direct a sale by the trustees; where such a course has appeared to be for the benefit of the charity. And what the Court will sanction upon its own consideration of what would have been beneficial to the charity, may also be done by the trustees upon their own authority in the exercise of their legal power.   In ordinary cases the most important part of the duty of trustees is to preserve the trust property, and it lies with those who seek to support a sale by them to show that the transaction in question was beneficial for the charity. In the absence of such proof, and *a fortiori*, if there be any evidence showing the sale was improvident or prejudical to the charity, it will certainly be considered a breach of trust and set aside. *(Atty. Gen.* v. *the Mayor of Newark*, 1st Hare, p. 395; *Atty. Gen.* v. *Butler*, Jac. p. 412; *Atty. Gen.* v. *Brettingham*, 3d Beavan, \*p. 95; *In re Park* v. *Charity*, 35 Eng. Ch. R. 330; *Atty. Gen.* v. *Warren*, 2 Swanston, \*303; *Atty. Gen.* v. *Smith*, 2 Vernon, 746; *Atty. Gen.* v. *Cross*, 3 Merivale, 541; *Atty. Gen.* v. *Hungerford*, 2 Clark and Findley, 357; *Atty. Gen.* v. *Kerr*, 2 Beavan, 429; *Atty. Gen.* v. *Brooke*, 48 Vesey, 320; *Clephane et al.* v. *The Lord Provost etc. of Edinburgh*, Law Reports, Appellate Series for 1869, Part II. p. 417.)

Appellant in reply cited.   *Tennent* v. *Taylor*, 9 Cranch, 42; *Thomas* v. *Ellmaker*, 1 Parson's Eq. Cases. 98; Flaherty's Case, 2 Id. 186.

WALLACE, J., delivered the opinion of the Court, CROCKETT, J.,  and RHODES, C. J.,  concurring:

The principal purpose intended by the donors was to provide "a Roman Catholic Church for the German Congregation of the City of San Francisco."   As a means to this end the lot on Sutter street, near Montgomery, was

selected, and at the time of the selection it was suitable or at least not inappropriate for that purpose. Subsequent events, not then anticipated, and therefore not expressly provided for by the donors, have already practically defeated the scheme of the original donation. Hotels and business houses and places of public resort have grown up in close proximity to the property. A variety of circumstances, the results of the unforeseen growth of a populous city beyond and around the premises have, as found by the Court below, rendered this lot "unsuitable as a site for an edifice for religious worship." These circumstances have, at the same time, greatly enhanced its value in the market, and it appears that a sum can be obtained for it which will be sufficient, after paying off the indebtedness of the church, to purchase a suitable lot in the city and erect thereon an edifice proper for the accomplishment of the original design of the donation. The Court below directed, under these circumstances, a sale of the premises and a reinvestment of the proceeds of the sale in furtherance of the objects of the trust. We see no error in the general scope of the decree. It cannot be said to have displaced or interfered with the original trust for that, so far as the particular premises are concerned, had already been practically defeated by the circumstances before adverted to. The decree in its effect re-establishes the trust as far as possible, and provides the only means by which the intent of the donors may be executed and carried into substantial effect. Under the circumstances, however, and in view of the fact that a large sum of money will come into the possession of the respondent, which it will become his duty to expend pursuant to the directions of the decree, we think that the Court below should have directed that he give a sufficient bond to secure the fund against possible loss.

It is therefore ordered that the cause be remanded to the Court below, with instructions to modify the decree by requiring of the respondent a bond with two sufficient sureties, to be approved by the Court below, in the sum of $140,-000, conditioned for the faithful application of the proceeds

of the sale according to the directions of the decree, and reserving the authority of the Court upon application of any party interested to exact a further bond, if the insolvency of the sureties or other circumstances should require it and its authority, if circumstances should make it necessary, to order the fund itself into the hands of another trustee of its own selection, to be applied and expended under the direction of the Court.

SPRAGUE, J., expressed no opinion.

Mr. Justice TEMPLE, being disqualified, did not sit in this case.

Upon petition by appellants for a modification of the judgment of this Court, WALLACE, J., rendered the following opinion; CROCKETT, J., and RHODES, C. J., concurring:

It is ordered that there be added to the directions to the Court below the following words: "It is further ordered that the costs of the litigation in the cause be paid out of the trust fund, and that the Court below allow to the appellants a reasonable counsel fee to be paid out of said trust fund."