[L. A. No. 16682.   In Bank.—February 8, 1940.]

In the Matter of PACIFIC COAST BUILDING–LOAN ASSOCIATION OF LOS ANGELES, CALIFORNIA (a Building and Loan Association). JUSTUS F. CRAEMER, Building and Loan Commissioner, etc., Respondent, v. H. P. DRAKE et al., Appellants.

[L. A. No. 16699.   In Bank.—February 8, 1940.]

In the Matter of PACIFIC COAST BUILDING–LOAN ASSOCIATION OF LOS ANGELES, CALIFORNIA (a Building and Loan Association). JUSTUS F. CRAEMER, Building and Loan Commissioner, etc., v. CLARICE B. HOLMES et al., Appellants.

H. L. Carnahan and J. W. McKinley for Appellants in L. A. 16682.

John C. Campbell, Otto A. Ehlers and Franz R. Sachse for Appellants in L. A. 16699.

Robert Lee Collins and James C. Ingebretsen for Respondent.

SHENK, J.—In the case of *In re Pacific Coast Building-Loan Association*, L. A. No. 16540 (*ante*, p. 134 [99 Pac. (2d) 251]), this day decided, the Building and Loan Commissioner, as liquidator of Pacific Coast Building-Loan Association, petitioned the superior court for instructions concerning the ranking of claims of investment certificate holders and membership shareholders of the association. His petition showed that investment certificate holders had been or would be paid the principal of their claims in full, and a question had arisen as to whether they should be paid interest thereon for the period of liquidation, in which event the assets would be insufficient to pay even the principal of the claims

of membership shareholders. A hearing was had, at which various investment certificate shareholders and membership shareholders appeared by counsel and argued the matter at length. The trial court decided in favor of the claims of membership shareholders, ordering payment of their principal before any interest during liquidation might be paid to investment certificate holders. On appeal, we have affirmed the order.

After the lower court's order, two groups of counsel representing the successful membership shareholders moved the court for an allowance of attorneys' fees for their services in the proceeding, to be paid out of the assets of the association. The court denied the motion. In its memorandum opinion explaining the denial of the motion of H. P. Drake et al., the court declared that in its opinion the services were of the value of $15,000, and that said sum would be allowed if the moving parties were entitled to any allowance. But the court further declared ''that this proceeding is not of the character which entitles a successful group to recover attorneys' fees from the common fund and upon that ground alone the application was denied''. A similar order was made with respect to the application of counsel for Clarice B. Holmes, et al., who sought an allowance of $3,000. (*In re Pacific Coast Building-Loan Association*, L. A. No. 16699.) An appeal was taken from the order in each case. As the same question is involved in both, the appeals will be disposed of in this opinion and order.

The record in the main appeal leaves no doubt as to the ability and industry of counsel for these groups of membership shareholders, and we find no reason to question the trial court's conclusion as to the value of their services. The sole question, as said court pointed out, is whether the proceeding was a proper one for the award of attorneys' fees. In our opinion it was not.

The doctrine invoked by appellants is one well established in equity. In brief, the rule is that where a common fund exists to which a number of persons are entitled, and a representative suit is brought by one or more for the benefit of the others, to obtain, preserve, or protect the fund, such party or parties suing may be awarded costs, including counsel fees, out of the fund. By this means all of the beneficiaries of the fund pay their share of the expense necessary to

make it available to them. (See, generally, *Trustees of Int. Imp. Fund* v. *Greenough*, 105 U. S. 527 [26 L. Ed. 1157]; *Sprague* v. *Ticonic Nat. Bank*, 307 U. S. 161 [59 Sup. Ct. 777, 83 L. Ed. 1184]; notes, 49 A. L. R. 1149; 107 A. L. R. 749; McCormick on Damages, p. 237.) The doctrine was applied in this state in *Alemany* v. *Wensinger*, 40 Cal. 288, and approved, though denied application in *County of Tulare* v. *Dinuba*, 205 Cal. 111 [270 Pac. 201], where the court discussed its limitations. In the latter case the county was entitled to a fund, and a suit was brought by a private attorney to obtain it for the county. Attorneys' fees were denied on the ground that the county had official legal representation by its own law department, under a statutory duty to perform that very service. This court observed (p. 127) : █ "The fact that one may be benefited by an action brought by another is not of itself sufficient to justify a court in assessing costs against the one who also profits by said action. Some contractual relation or some equitable reason sufficient to support an allowance of costs must be shown to exist to justify a court of equity in making such assessment."

█ In order to determine whether an award was appropriate in the present case we must see what proceedings were taken. The first step was the commissioner's petition on March 25, 1937, in which he set forth certain payments, described the remaining assets, asserted that he was a "disinterested stakeholder", and requested a decree declaring the relative rights of the rival claimants. The court fixed a date for hearing of the petition, directed notice to be given by publication and mail, and authorized any interested party to appear and file pleadings or points and authorities. Counsel appeared on behalf of custodians of Telluride Association, substantial holders of investment certificates. Thereupon H. P. Drake, a large holder of membership shares, communicated with many other such shareholders, informing them that he had engaged counsel to represent them and asking subscriptions for this purpose, adding that counsel, if retained, would petition the court for an allowance of fees and expenses. A large number of shareholders responded, and from their subscriptions Mr. Drake paid his attorneys a retainer of $1,000. At this time counsel also appeared for Clarice Holmes and several others who joined with her and are appellants herein. Thereafter said counsel filed points

and authorities and argued the matter. The result, as already pointed out, was a decision in favor of the membership, shareholders.

The appellants contend that the action taken by Drake and the others was necessary to preserve the rights of the entire group of membership shareholders because the commissioner took a neutral position, and made no attempt to decide the issue of priority or to advise the court thereon. The particular complaint, however, is simply that the commissioner did not take sides. In fact, he did advise the court; through his counsel he furnished points and authorities covering the issues of fact and law, and participated in the oral argument. It is not, and could not be seriously contended, that he acted other than in good faith, and we have no reason to doubt the adequacy of the legal presentation to the court. It is quite obvious that he had to take an impartial position, seeking that form of distribution which was in accord with legal and equitable principles. And there is nothing in the record to show that the court was not fully advised on the law by counsel for the commissioner, despite the fact that they did not appear as advocates of either group of claimants.

Under these circumstances, it does not seem to us that a proper case was presented for the doctrine invoked by appellants. The proceeding was not, in the first place, a suit to obtain or protect a common fund. The fund was already there, and was under the administration of a statutory officer charged with its protection and proper distribution. Counsel for appellants did not make it available; the commissioner made it available. In the second place, this was not a representative suit on behalf of beneficiaries of the fund, against adversaries improperly withholding a fund. It was a proceeding initiated by the commissioner for the purpose of making an equitable and proper distribution of the fund. Appellants appeared by invitation of the court, but they did not commence nor control the proceeding. All the steps taken in the proceeding which ultimately benefited the shareholders were commenced by the commissioner and the proceedings would have followed the same course if appellants had not appeared. In short, the commissioner, legally charged with the duty of protecting the interests of the membership shareholders as well as other claimants, presented the legal issue of priority to the court, and the court, in the exercise of its

judgment, decided the issue in favor of the membership shareholders. To assert that the efforts of counsel for appellants were necessary to create or preserve the fund, is to imply incompetency or dereliction in duty in the commissioner or the court, and no such charge is in fact made, or could be made. As the court said in *General Finance Corp.* v. *New York State Rys.*, 3 Fed. Supp. 975, 976: "In the case at bar the petitioning attorney did not create this fund. The fund existed and was in the hands of the receivers for distribution. It cannot be said that the efforts of the petitioner secured the fund. The receivers were represented by counsel, and there was no danger that the fund would be dissipated or negligently administered. . . . " (See, also, *County of Tulare* v. *Dinuba, supra.*)

Indeed, appellants must really rest upon the narrow ground that their legal presentation was more able, more convincing, and therefore more valuable, than that of the commissioner. But this cannot be a basis for the award of fees to private counsel where the services are already subject to performance by a public officer and official counsel, and these parties have properly performed their duties. Nor is it possible to say that the mere existence of conflicting claims between the parties entitled to distribution herein makes this a characteristic representative suit to obtain a fund. It does not take much imagination to conceive of a fund which would be properly administered by a statutory liquidator, and distributed among numerous conflicting claimants, but which could be wholly dissipated if each rival group treated the distribution as an adversary proceeding, and all produced private counsel to assert their priorities.

It follows that the lower court was correct in concluding that counsel fees should not be allowed.

The orders are affirmed.

Gibson, J., Carter, J., Edmonds, J., and Waste, C. J., concurred.

Curtis, J., concurred in the judgment.

Rehearing denied.