[No. S045960. Dec. 18, 1995.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. ROBERT J. SWEET et al., Defendants and Respondents.

**COUNSEL**

Robert L. Fletcher, Jr., Tax Collector Attorney, Deborah B. Honig, Assistant Tax Collector Attorney, Louise H. Renne, City Attorney, and Dennis Aftergut, Chief Assistant City Attorney, for Plaintiff and Appellant.

Phillip S. Cronin, County Counsel (Fresno), Anne Kinzel, Deputy County Counsel, Mark W. Pike and Philip D. Peatman as Amici Curiae on behalf of Plaintiff and Appellant.

Edwin Train Caldwell for Defendants and Respondents.

Ian Herzog, Mary Alexander, Bruce Broillet, David Casey, Douglas Devries, Larry Drivon, Joe Horbison, Steven Kleifield, Moses Lebowitz, Harvey R. Levine, Wayne McClean, David Rosen, Leonard Sacks, Dan Smith, Robert Steinberg, Thomas G. Stolpman, Jim Sturdevant, Tony Tanke, Leann Tratten, William David Turley, Roland Wrinkle and Thomas H. Speedy Rice as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BAXTER, J.**—Government Code section 23004.1[1] gives a county a first lien for the cost of medical care it has provided to an injured person against any judgment that person recovers from a third person who is responsible for the injury. The issue in this case is whether that lien is subject to equitable reduction for a portion of the attorney fees incurred by the injured party in recovering damages from the person responsible for the injury.

The Court of Appeal held that allocation of a pro rata share of attorney fees to the county's recovery is proper notwithstanding the statutory command that the county lien secure the full value of the services rendered because the Legislature did not express an intent that common law equitable principles were not applicable to section 23004.1 liens. We disagree and reverse the judgment of the Court of Appeal.

---

[1]All statutory references are to the Government Code unless otherwise noted.

Section 23004.1, subdivision (b) provides in pertinent part: "In the event that the injured person . . . brings an action for damages against the third person who is liable for the injury or disease, the county's right of action shall abate during the pendency of such action, and continue as a first lien against any judgment recovered by the injured or diseased person, his guardian, personal representative, estate, or survivors, against the third person who is liable for the injury or disease, to the extent of the reasonable value of the care and treatment so furnished or to be furnished."

Before the enactment of section 23004.1, the county had adopted a municipal ordinance (S.F. City Health Code, § 124), giving the county a lien on a patient's recovery in a third party action. The lien in this case was filed under the authority of San Francisco City Health Code section 124, not section 23004.1. However, appellant asserts, and respondents do not contest, that section 124 is meant to implement the same policy as that underlying section 23004.1 and should be interpreted in the same way as the latter section. Accordingly, we analyze this case as if the lien had been filed pursuant to section 23004.1.

# I

## *Background*

While crossing a San Francisco street, defendant Sweet was injured when struck by an automobile driven by Robin Jones. Sweet was transported to a hospital operated by the City and County of San Francisco (the county) where he received treatment. He was later transferred to another county hospital facility for additional treatment. Sweet was unable to pay the $35,454.60 cost of that treatment with interest.[2] After several attorneys declined to represent Sweet in an action against Jones because Sweet had been jaywalking and Jones's liability was not clear, defendant Edwin Train Caldwell agreed to do so and filed an action on Sweet's behalf against Jones. Caldwell was successful in obtaining a settlement of $175,000. Reduced by attorney fees and costs, Sweet's net recovery was $100,748.53.

Caldwell asked the county to reduce the lien the county had asserted in the action against Jones. The county had discretion to reduce the lien under section 23004.2, but the county declined to do so.[3] Caldwell then set aside $22,000 from Sweet's net recovery to satisfy the lien as reduced by what he believed to be the county's proportionate share of attorney fees incurred in creating the "fund" from which the county sought to recover its expenses. The county then initiated this action against Sweet and Caldwell to recover the full amount of its lien and to establish a constructive trust in the amount of the lien on the funds held by defendants.[4]

The trial court concluded that the "common fund" doctrine, under which fairness to the actual successful litigant requires that all who benefit from the creation of the fund share the burden of its recovery (see *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 257 [44 L.Ed.2d 141, 153, 95 S.Ct. 1612]; *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748]), was applicable. The Court of Appeal affirmed the judgment, which awarded

---

[2]The county's brief states that the cost of treatment as established at trial, was $26,657.73. The complaint, filed on June 26, 1992, states the cost as fixed by ordinance adopted by the board of supervisors pursuant to Health and Safety Code section 1473 was $32,833.44, that as of the date the complaint was filed, $4,439.15 in interest at 7 percent per annum was due and owing, and that the balance due was $34,033.48. The lien, executed on January 8, 1991, was for $35,454.60. These discrepancies, apparently the result in part of a reduction of the claimed amount after a Medi-Cal reimbursement was received by the county, are not in issue here. The figures we have used above are those stated in the Court of Appeal opinion.

[3]Defendant Sweet's recovery ($175,000) exceeded the amount necessary to pay his attorney fees of $60,449.12, litigation expenses of $13,802.35, and the county hospital lien of $35,454.60.

[4]The $22,000 was released to the county while the action was pending.

the county only an additional $159.12. In doing so the Court of Appeal distinguished and disagreed with *Lindsey* v. *County of Los Angeles* (1980) 109 Cal.App.3d 933 [167 Cal.Rptr. 527], which held that the common fund principle does not apply to a debt owed to a county for medical care provided at public expense. The Court of Appeal held instead that the pro rata deduction for attorney fees was permitted notwithstanding section 23004.1.

The county, supported by the California State Association of Counties and the Counties of Fresno and Santa Clara as amici curiae, claims that the Court of Appeal erred in both respects.

II

*Discussion*

A. *The Common Fund Doctrine.*

█ The common fund doctrine recognizes the common law "historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit. That rule has been consistently followed. *Central Railroad & Banking Co.* v. *Pettus*, 113 U.S. 116 [28 L.Ed. 915, 5 S.Ct. 387] (1885); *Harrison* v. *Perea*, 168 U.S. 311, 325-326 [42 L.Ed. 483-484, 478, 18 S.Ct. 129] (1897); *United States* v. *Equitable Trust Co.*, 283 U.S. 738 [75 L.Ed. 1379, 51 S.Ct. 639] (1931); *Sprague* v. *Ticonic National Bank*, 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777] (1939); *Mills* v. *Electric Auto-Lite Co.*, 396 U.S. 375 [24 L.Ed.2d 593, 90 S.Ct. 616] (1970); *Hall* v. *Cole*, [(1973) 412 U.S. 1 (36 L.Ed.2d 702, 93 S.Ct. 1943)]; cf. *Hobbs* v. *McLean* 117 U.S. 567, 581-582 [29 L.Ed. 940, 945-946, 6 S.Ct. 870] (1886)." (*Alyeska Pipeline Co.* v. *Wilderness Society, supra*, 421 U.S. 240, 257-258 [44 L.Ed.2d 141, 153-154], fn. omitted.)

While the doctrine was first recognized and applied in a situation in which a common fund was created (*Trustees* v. *Greenough* (1882) 105 U.S. (15 Otto) 527 [26 L.Ed. 1157]), in *Sprague* v. *Ticonic Bank* (1939) 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777] it was extended to an action where no fund was created but the party sharing in the attorney fee expense was benefited by the litigation.

The doctrine has been recognized and applied consistently in California when an action brought by one party creates a fund in which other persons

are entitled to share.[5] Although once described as a principle of representation or agency (see *County of Tulare* v. *City of Dinuba* (1928) 205 Cal. 111, 127 [270 P. 201]), it is now recognized as an equitable principle. "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be properly and directly compensated should his efforts be successful. (See *Estate of Reade* (1948), *supra*, [31 Cal.2d 669,] 671-672 [3]; *Winslow* v. *Harold G. Ferguson Corp.* (1944), 25 Cal.2d 274, 283-286 [8a-13] [153 P.2d 714]; Hornstein, *Counsel Fee Awards* (1956), 69 Harv.L.Rev. 658, 662.)" (*Estate of Stauffer*, *supra*, 53 Cal.2d 124, 132; see also *Scott* v. *Superior Court* (1929) 208 Cal. 303, 306 [281 P. 55]; *Glendale City Employee's Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 341, fn. 19 [124 Cal.Rptr. 513, 540 P.2d 609]; *In re Pacific Coast Bldg.-Loan Assn.* (1940) 15 Cal.2d 155, 157-158 [99 P.2d 261].)

■ California courts have also recognized a limited extension of the doctrine beyond the common fund situation to those situations in which the litigation benefits the defendant. (*Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244]; *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 203-204 [81 Cal.Rptr. 683]; *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146].) This court recognized the limited nature of this extension in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], where the court held that attorney fees could not be awarded under this theory against a defendant when the benefit of the action was conferred on the plaintiff: "The second principle, of more recent development, is the so-called 'substantial benefit' rule: when a class action or corporate derivative action results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature, upon the defendant in such an action, that defendant may, in the exercise of the court's equitable discretion, be required to yield some of

---

[5]Although the basis for the award was not articulated in the opinion, the earliest example of the common fund theory in this state may be found in *Alemany* v. *Wensinger* (1870) 40 Cal. 288. The plaintiff Roman Catholic Archbishop of San Francisco was awarded attorney fees to be paid by a trust fund he had succeeded in creating for the benefit of the parishioners of a church who had unsuccessfully opposed sale of the church and related property that the archbishop held in trust for the congregation.

those benefits in the form of an award of attorney's fees. [Citations.] [¶] . . . [T]he 'substantial benefit' rule can have no application herein for the simple reason that any 'benefit' bestowed as a result of the judgment herein was bestowed on *plaintiffs* and those similarly situated, not on the medical board or the Attorney General." (*Id.* at p. 25, fn. omitted.)

After *D'Amico v. Board of Medical Examiners, supra*, 11 Cal.3d 1, however, this court extended equitable apportionment of attorney fees to some third party suits in which no common fund was created. In *Quinn v. State of California* (1975) 15 Cal.3d 162, 168-171 [124 Cal.Rptr. 1, 539 P.2d 761], the court did so in a judgment recovered by an injured worker against a negligent third party. We allowed apportionment when the plaintiff's employer asserted its right to recoup the workers' compensation benefits the employer had paid to the plaintiff. Unlike this case, the employer that bore the share of the attorney fees was not a true lien creditor and its rights depended on the merits of the employee's cause of action against the third party. For that reason we deemed the case to be "virtually identical" to a common fund case. (15 Cal.3d at p. 168, fn. 10.) We based our conclusion that apportionment was appropriate on both the equitable principle discussed above *and* the Legislature's incorporation of the principle into Labor Code section 3856, which governs employer liens on third party judgments to recover compensation paid by the employer.[6]

The *Quinn* court suggested that apportionment might be appropriate even absent statutory authorization. (*Quinn v. State of California, supra*, 15 Cal.3d 162, 168.) We also acknowledged, however, that prior to the enactment of the attorney fee provision in the 1939 version of Labor Code section 3856, this court had held that apportionment of attorney fees had no place in the workers' compensation law (*Dodds v. Stellar* (1947) 30 Cal.2d 496 [183 P.2d 658]), and that this court had, in effect, "instructed" the Legislature to enact statutory authorization for apportionment if that was its intent. (*Quinn v. State of California, supra*, 15 Cal.3d 162, 171.) Thus, *Quinn* did not hold that the court may order equitable apportionment in third party actions in which the right to recover a debt from an injured party's judgment is statutory. Legislative intent governs.

---

[6]Labor Code section 3856 provides in pertinent part: "In the event of [a] suit against such third party: [¶] . . . [¶] (b) If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in the preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. *After payment of such expenses and attorney's fee* the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation . . . ." (Italics added.)

The Court of Appeal then permitted equitable apportionment in *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1978) 83 Cal.App.3d 413, 417-418 [148 Cal.Rptr. 54] (*California School for the Deaf*), *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1979) 91 Cal.App.3d 493 [154 Cal.Rptr. 760] (*Brennan*), and *Lee* v. *State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458, 469 [129 Cal.Rptr. 271].

In *Lee*, the plaintiff was required by provisions of his insurance contract to reimburse the insurer for medical payments out of any recovery against a third party who caused the injuries. The Court of Appeal held that although the contract made no provision for the insured's attorney fees, the insurer would be unjustly enriched if allowed to recover from the settlement recovery without participating pro rata in the attorney fees and costs incurred in obtaining the recovery.

*California School for the Deaf* addressed apportionment when an injured worker who had procured medical treatment from a Kaiser Foundation hospital was successful in establishing that her injury, suffered four years earlier, was work related and recovered workers' compensation benefits. The Workers' Compensation Appeals Board charged part of the fee award to the worker's attorney to the lien Kaiser placed on the award seeking reimbursement for its medical services. The Court of Appeal held that even though the apportionment was not governed by Labor Code section 3856, apportionment of the attorney fees was proper under *Quinn* v. *State of California, supra*, 15 Cal.3d 162. Reimbursement of Kaiser was actually a compensation award to the worker. Moreover, the court reasoned, Kaiser was not simply a lien creditor, as there was a real issue in the workers' compensation proceeding as to whether the injury was work related. Kaiser was the passive beneficiary of the "active litigant['s]" efforts. (*California School for the Deaf, supra*, 83 Cal.App.3d 413, 417.)

In *Brennan*, Kaiser again claimed that the Workers' Compensation Appeals Board lacked authority to charge part of an injured worker's attorney fee award against Kaiser's lien claim for medical services. Again the lien was not filed pursuant to Labor Code section 3856, but the Court of Appeal held that the claim was governed by *Quinn* v. *State of California, supra*, 15 Cal.3d 162, and *California School for the Deaf*, even though, unlike the latter case, there was no issue as to industrial causation and the *Brennan* claim was resolved by a compromise and release without the necessity for a contested hearing. In both cases the lien claimant received payment because of the efforts of the worker's attorney. (*Brennan, supra*, 91 Cal.App.3d 493, 498-499.)

In *Lindsey* v. *County of Los Angeles, supra,* 109 Cal.App.3d 933 (*Lindsey*), however, the Court of Appeal distinguished the bases for equitable prorationing of attorney fees relied on in the above cases. The relevant facts of *Lindsey* are identical to those presented here. The plaintiff had received treatment from county facilities for injuries suffered in an automobile accident. He sued the person who caused the injuries. The county, which did not participate in the litigation, claimed a lien for the full amount of the debt owed by the plaintiff for medical treatment. The plaintiff sought declaratory relief that, because he had created a fund, justice and equity required that the county bear a portion of the attorney fees and costs he had incurred in doing so. The trial court ruled that section 23004.1 allowed the county to recover the full amount of its lien and did not authorize attorney fees, and that the common fund rationale for allowing attorney fees did not apply.

The Court of Appeal affirmed. In doing so the court agreed with the trial court that the common fund cases were distinguishable and did not control. In the common fund cases three common elements appeared: (1) there would have been no recovery without the litigation; (2) the beneficiaries of the litigation would be paid out of the fund made available by the litigation; and (3) the attorney fees were sought by the sole "active litigant" whose recovery created the fund. By contrast, the county and the plaintiff in *Lindsey* had a debtor-creditor relationship. The county's rights were not contingent upon the plaintiff's success in the third party action, as the plaintiff was primarily liable to the county for the medical treatment he had received. The Court of Appeal noted that this court had made that distinction in *Quinn* v. *State of California, supra,* 15 Cal.3d 162, 168-169, footnote 10, where we said: "We would dispel in passing a confusion engendered by the defendant's characterization of himself as a mere lien creditor. While the statute uses this term to describe the employer's rights in any actual recovery by the worker, the words 'lien creditor' are misleading, for unlike the usual lien creditor[,] the employer's rights here depend entirely upon the worker's *success* in his third-party suit. Should he lose, the 'lien' evaporates; this contingency renders this case virtually identical to the usual 'common fund' situation." Therefore, the Court of Appeal reasoned, the county was not "taking advantage" of the plaintiff's efforts in the third party suit as happened in the common fund cases. The plaintiff was directly liable to the county regardless of the outcome of the third party action. (See Health & Saf. Code, § 1473.) Moreover, but for the abatement provision of section 23004.1, the county could have sued the third party directly for the debt. The debt was owed and payable without reduction for attorney fees and could have been satisfied out of any property the plaintiff acquired.

In the case now before this court, the Court of Appeal concluded that the rationale of *Lindsey* was "faulty." Because the plaintiff was unable to pay the

cost of his hospital care, it was irrelevant that the debtor-creditor relationship existed and that the plaintiff was liable directly to the county regardless of whether he recovered damages from the third party tortfeasor. There would have been no source from which the county could have recovered the sum due for medical care if the plaintiff's attorney had not been successful in the third party suit. Therefore, the county was indeed taking advantage of the plaintiff who was the active litigant responsible for creating the recovery. It would be unfair, therefore, if the county obtained the benefit of a cash recovery without equitable apportionment of the plaintiff's attorney fees. Although the county might have proceeded against the third party, it would have incurred attorney fees and costs in doing so.

The county argues here that *Lindsey* correctly distinguished the debtor-creditor relationship, in which the creditor obtains a lien on or attaches a third party judgment recovered by a debtor, from common fund cases. The common fund cases, it notes, are exceptions to the general rule applicable in this country that each party to litigation must bear the expense of its own attorney fees.[7] It is only when exceptional circumstances are present that equitable principles militate in favor of a departure from that general rule. The court acknowledged this limitation in *Estate of Reade* (1948) 31 Cal.2d 669, 671-672 [191 P.2d 745]: "Compensation for the services of an attorney must be paid by the person employing him, in the absence of a special agreement, special statutory provision, or exceptional circumstances. The latter exist in certain actions in equity. For example, a plaintiff who has succeeded in protecting, preserving or increasing a fund for the benefit of himself and others may be awarded compensation from the fund for the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just."

Defendants agree with the conclusion of the Court of Appeal here that *Lindsey* was incorrect, and argue that it is distinguishable in any event. They contend that public policy favors apportionment of attorney fees in cases like this where the county would have had no recovery but for the litigation instituted by the plaintiff, or would have itself incurred the expense of litigation had it pursued the action.

The county argues that, unlike the common fund cases, this is a case involving only a debtor-creditor relationship. The county had a right to

---

[7]The California version of this "American" rule is codified in Code of Civil Procedure section 1021: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." (See also *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 99 [37 Cal.Rptr. 194, 389 P.2d 722].)

recover the amount owed to it from any assets subsequently acquired by Sweet, not just from moneys Sweet received in the underlying litigation. The action was brought for the benefit of Sweet, who would realize some benefit even if his recovery did not exceed or even equal the amount of the county lien and the costs of suit, including attorney fees, because the amount of his debt to the county would be reduced or eliminated. Were Sweet permitted to reduce the county's lien by a share of his attorney fees, he would receive a benefit denied other debtors whose debt for hospital care has to be paid in full regardless of the source of their after-acquired funds and regardless of whether they had to resort to litigation to acquire them. The county also argues that there is no equitable principle that allows a debtor in Sweet's circumstances to shift part of the cost of hospital care to the taxpayers, who must subsidize the unrecovered expenses of operating the county hospital.

We conclude that the *Lindsey* court correctly distinguished actions to recover damages from the common fund/substantial benefit decisions. A personal injury action seeking to recover damages for injuries inflicted on the plaintiff by another is not an action taken for the benefit of the plaintiff's creditors. It is prosecuted for the benefit of the plaintiff. Carried to its logical conclusion the rule espoused by defendants and adopted by the Court of Appeal in this case would expand the common fund exception well beyond the "exceptional" common fund/substantial benefit cases in which equitable principles justify apportionment of attorney fees. The theory on which the Court of Appeal relied—that a creditor would have no source from which to satisfy a debt owed by an indigent if the indigent had not achieved a tort recovery—is not logically capable of limitation to indigent recipients of county-provided hospital and medical care. In any case in which a debtor is unable presently to meet an obligation, a success in obtaining a monetary judgment or settlement, whether or not related to the event giving rise to the debt, would create a "fund" from which the creditor could recover. Under the reasoning of the Court of Appeal, a successful will contest would create a fund, as would a successful action seeking damages for breach of contract. Logically, if several judgment creditors placed liens on a debtor plaintiff's cause of action because no other source of payment was available, the recovery of each creditor would be reduced by a share of the plaintiff's attorney fees proportionate to the debt owed that creditor. No case has been called to our attention which suggests that a creditor's recovery on a judgment lien should be reduced by an amount attributable to the plaintiff's litigation expenses in an action which provides a source of payment of the

debt.[8] Moreover, defendants make no effort to explain why equitable principles support apportionment when the county obtains a lien pursuant to section 23004.1 during the pendency of the injured party's action, when no apportionment is available if the same fund is attached or levied on after payment of the judgment.

In common fund cases the litigation has been undertaken in contemplation that a fund will be created that will confer a benefit on a class of beneficiaries with a common interest in the benefit obtained, but a personal injury tort action is undertaken for the benefit of the injured plaintiff. The plaintiff's creditors do not have an interest in the recovery in common with the plaintiff. That the creditors may benefit from any recovery is an incidental, not an intended, benefit of the litigation. (See *Sisters of Charity of Providence of Mont.* v. *Nichols* (1971) 157 Mont. 106, 111 [483 P.2d 279, 283]; *Broadlawns, etc.* v. *Estate of Major* (Iowa 1978) 271 N.W.2d 714, 717; *Mitchell* v. *Huntsville Hospital* (Ala. 1992) 598 So.2d 1358, 1361.) Unlike the interest of other claimants to a common fund, the creditor's right to payment is not contingent on litigation which creates a fund. Thus, no equitable principles justify departure from the statutory command of Code of Civil Procedure section 1021 that each party to litigation bear the expense of its own attorney fees.[9]

Defendants argue that this case is distinguishable from *Lindsey* because here the underlying liability was "tenuous," and because here the county "arbitrarily" refused to compromise its lien for less than the amount due. Neither factor is relevant to the common fund/substantial benefit principle, however. The fact remains that defendant Sweet received services from the county for which payment was due. He was a debtor whose assets the county had a preexisting right to pursue regardless of the source of those assets.

---

[8]Code of Civil Procedure section 695.030, subdivision (b)(2), makes a pending cause of action for money subject to enforcement of a money judgment. The lien is for "the amount required to satisfy the money judgment," (Code Civ. Proc., § 697.010) with costs and interest (Code Civ. Proc., § 695.210).

[9]The Court of Appeal also noted that defendant Sweet's counsel obtained a "remarkably good recovery" in a case in which liability was in doubt. The court apparently believed that this established that the county benefited from the litigation and that it was an equitable basis on which to apportion fees. The quality of legal services and the favorable result of the litigation are not relevant in determining whether the court may order apportionment of attorney fees between the plaintiff and the creditor county, however.

Moreover, defendants fail to identify an equitable principle that justifies compelling the taxpayers to provide discounted medical care to patients who subsequently become able to pay in full the cost of the medical care provided to them at a county hospital. To do so would be inconsistent with the statutory obligation to pay for medical care provided by a county hospital (Health & Saf. Code, § 1473) and might constitute an inappropriate expenditure of public funds for private purposes. (*Reichle* v. *Hazie* (1937) 22 Cal.App.2d 543, 547-548 [71 P.2d 849]; *Goodall* v. *Brite* (1936) 11 Cal.App.2d 540, 551 [54 P.2d 510].)

Our conclusion that the common fund doctrine has no applicability when the relationship of the litigation plaintiff and the hospital lien claimant is that of debtor and creditor, and that the amount of the lien may not be reduced or diminished by apportioning attorney fees accords with the almost unanimous view of the courts of our sister states that have considered the question. This is true whether a public or private hospital lien is in issue, and regardless of the theory on which apportionment has been sought.

The Texas Supreme Court reached that conclusion in *Bashara* v. *Baptist Memorial Hosp. System* (Tex. 1985) 685 S.W.2d 307, 309, where the court explained that the purpose of the state's lien statute "is to provide hospitals an additional method of securing payment for medical services, thus ensuring the prompt and adequate treatment of accident victims." Therefore, the court held, the hospital is to recover the full amount of its lien because "the language and intent of the statute militate strongly against permitting recovery of a patient's attorney's fees from the corpus of the hospital lien." (*Ibid.*)

In *Mitchell* v. *Huntesville Hospital, supra,* 598 So.2d 1358, 1361, the court held that an attorney could not recover a fee from the proceeds of a lawsuit that were paid to the hospital by the injured patient's medical insurer as a result of the attorney's efforts. There was no statutory authority for such recovery, and the common fund theory was inapplicable because the attorney had acted on behalf of the client with whom the hospital was in an adversarial relationship. The court also noted that even had the insurer paid the benefits directly to the insured, and the attorney had deducted his fee, the patient would have remained liable to the hospital and the hospital's lien would have remained in effect.

*Sisters of Charity of Providence of Mont.* v. *Nichols, supra,* 483 P.2d 279, the first case to address the claim of an attorney that a hospital with a lien on the proceeds of a third party action should share in the attorney fees, rejected an argument that the hospital was subrogated to the patient's tort claim. The court explained that the lien was based on a debt owed to the hospital and "[t]he fact that an incidental benefit was also received by the hospital from [the patient's] attorneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay [the patient's] attorneys for their services." (*Id.* at p. 283.) A subrogation theory was also rejected in *National Ins.* v. *Parkview Memorial Hosp.* (Ind. Ct. App. 1992) 590 N.E.2d 1141, 1145. There a statute gave the hospital a lien and provided that if the patient released or settled without release of the lien, the hospital could seek damages from the patient. The court held that the hospital was not subrogated and that under the Indiana

statute the hospital's recovery was not diminished by a pro rata share of the patient's attorney fees even when the lien claim exceeded the policy limits of available insurance.

*Memedovic* v. *Chicago Transit Authority* (1991) 214 Ill.App.3d 957 [158 Ill.Dec. 613, 574 N.E.2d 726, 727] rejected an attempt to reduce a hospital lien by the amount of the patient's comparative negligence, explaining: the "lien is a legal claim upon the property recovered as security for payment of the debt." The plaintiff was a debtor who was obligated to pay for hospital services out of any resources that became available to him. Therefore, under the Illinois hospital lien statute the court had no discretion to reduce the amount, pursuant to that state's law, if the total amount of the liens on the recovery did not exceed one-third of the award. (*Id.* at pp. 726-727.)

An implied contract theory was rejected by the court in *Broadlawns, etc.* v. *Estate of Major, supra*, 271 N.W.2d 714, where the court held that a hospital with a lien was not responsible for a proportionate share of the attorney fees of an estate that settled a wrongful death action, as the hospital was not a party to the estate's contingency fee contract. There was no unjust enrichment of the hospital in permitting it to recover the amount of its lien. The common fund theory was held inapplicable "because the hospital and administrator do not stand on equal bases as claimants against the fund. Rather the hospital's claim to the fund arose only because the hospital was the decedent's, and thus his estate's, creditor." (*Id.* at p. 717.)

In *Hosp. Bd. of Directors of Lee* v. *McCray* (Fla.Dist.Ct.App. 1984) 456 So.2d 936, 939 the court held that "[a] hospital statutory lien may not be impaired or diminished by the amount of the attorney's fees which may be due the patient's counsel." The court reasoned that the statute afforded public hospitals a solution to the problem of obtaining payment for services rendered to insolvent patients. The court reasoned that the state's Legislature had concluded that concern for the public welfare, by ensuring that hospitals received full payment, outweighed the private concerns.

Only *Martinez* v. *St. Joseph Healthcare System* (1994) 117 N.M. 357 [871 P.2d 1363], on the reasoning of which the Court of Appeal relied, appears to have reached a contrary conclusion. There the court believed that if the debtor's attorney did not secure a judgment against the tortfeasor there would be nothing to which the hospital lien could attach, and that if attorney fees did not have to be apportioned the hospital would be encouraged to simply sit back and reap the rewards of the debtor's judgment. (871 P.2d at p. 1367.) The court also observed that because the statutes at issue in cases

decided by other jurisdictions put limits on the amount of the hospital lien, it could be inferred that the legislature in those states did not intend to put any additional limits on the amount the hospital could recover. The New Mexico statute, by contrast, had no such limit. (871 P.2d at p. 1366.) Nor does section 23004.1.

As we have pointed out above, however, a county hospital in this state is not limited to recovery from the third party tortfeasor. The hospital may recover the sums due from any after-acquired assets of the debtor. Moreover, far from electing to simply sit back and await payment from the debtor's lawsuit, under California law, if the debtor files an action against the third party, the county may not do so and any action it has initiated is abated. California law differs from that of New Mexico in that, as discussed below, the legislative history of section 23004.1 suggests that our Legislature intended that a county hospital have the right to recover the full amount of its lien from the debtor's third party recovery.

B. *Legislative Intent.*

■ Defendants argue that, because section 23004.1 does not expressly preclude apportionment of attorney fees, the court has inherent equitable power to order apportionment, and public policy favors permitting the court to order equitable apportionment in third party actions such as this because everyone wins. The county and taxpayer win because they would receive nothing otherwise unless the county itself undertook the litigation and its attendant costs. Debtors benefit from representation that would not otherwise be available, and society benefits because tortfeasors do not escape liability simply because the victim is indigent.

We are unpersuaded. A third party suit by the county to recover only the cost of patient care might be brought and possibly settled much more quickly and at less expense than a tort action by the patient in which recovery for pain and suffering is also sought. The action by the patient abates any suit by the county, however, and forces the county to await the eventual disposition of the patient's action, which may involve claims far exceeding the cost of hospital care.[10]

Moreover, while it is true that the county may recover without the necessity of incurring the expense of litigation if the patient sues, the public

---

[10]While defendant Sweet had difficulty in finding counsel to represent him, the reason appears to be related more to the potential merit of the case than to his possible indigence. Defendants concede that the position of the third party defendant was strong. An independent witness was available to testify that Sweet was the sole cause of the accident because he ran across the street, out of the crosswalk, and the driver had no opportunity to avoid impact. The third party defendant also had available an expert accident reconstruction witness who

policy in this arena has been established by the Legislature. This court is not free to accede to defendants' request that the trial court be given discretion to decide whether attorney fees should be apportioned in these cases. The Legislature has not provided for apportionment in every case, but instead has given *the county* the discretion to compromise or waive its claim in individual cases. When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy. We are obliged to carry out the intent of the Legislature if it can be ascertained. While it is true that the inference to be drawn from legislative inaction is not strong (*Quinn* v. *State of California, supra,* 15 Cal.3d 162, 175), we also note that the Legislature has not amended section 23004.1 since *Lindsey* was decided in 1980. The inference that *Lindsey* understood and applied the legislative intent underlying section 23004.1 correctly is certainly strengthened by the failure of the Legislature to amend the section in the 15 years since that case was decided.

The Court of Appeal reasoned that the equitable principles which underlie the common fund doctrine may be applied to reduce the county's recovery by the amount of its proportionate share of plaintiff's attorney fees because the Legislature had not expressly precluded apportionment in section 23004.1. The Court of Appeal relied on "[t]he well-settled rule of statutory construction . . . that legislative enactments should not be construed ' "to overthrow long-established principles of law unless such [an] intention is made clearly to appear either by express declaration or by necessary implication." ' " (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569].) It applied the rule here because the common fund doctrine is well established and has its roots in the court's historic equity powers.

The Court of Appeal thereby extended the common fund doctrine beyond its historic roots in contravention of the presumption created by Code of Civil Procedure section 1021 that unless otherwise provided by contract or statute a party must bear its own attorney fees, and it deemed irrelevant the implication apparent in the statutory scheme that the Legislature did not intend county hospital liens on a patient's third party recovery to be reduced by a proportionate share of the plaintiff's attorney fees.

The rule on which the Court of Appeal relied has no application here. Denying apportionment of fees in this case does not "overthrow" a well-established legal principle, as this court's exercise of its inherent equitable

---

concluded that Sweet was the cause of the accident. While defendants do not enlighten us with the evidence or theory on which they believed a meritorious basis for suit existed, neither do they persuade us that Sweet's difficulty in finding counsel willing to bring the suit is fairly attributable to being indigent.

jurisdiction in the common fund/substantial benefit cases has never sanctioned apportionment in a debtor-creditor lien situation. Our reluctance to exercise this power beyond the common fund exception to Code of Civil Procedure section 1021 is reflected in past decisions. (See, e.g., *Baugness* v. *Paine* (1978) 22 Cal.3d 626, 636 [150 Cal.Rptr. 461, 586 P.2d 942]; *D'Amico* v. *Board of Medical Examiners*, *supra*, 11 Cal.3d 1, 27.)

In construing section 23004.1 therefore, the court does not presume that any exception to Code of Civil Procedure section 1021 applies. That being so, there is no reason to anticipate that the Legislature would expressly negate the applicability of the common fund exception in the language of section 23004.1.[11] We presume instead that the Legislature, like the court, proceeds on the assumption that the statutory allocation of responsibility for litigation attorney fees is applicable, not that the common fund exception applies.

That presumption is supported by the several statutes in which the Legislature has felt it necessary to make express its intent that attorney fees be apportioned. The Legislature made express provision in Welfare and Institutions Code sections 14124.72[12] -14124.791[13] for attorney fee apportionment when the Director of Health Services seeks reimbursement of Medi-Cal benefits or a provider of services seeks payment of charges out of a third party judgment obtained by the recipient.

[11]The same is true of Civil Code section 3045.1 et seq., which governs liens for the cost of emergency and ongoing medical care provided to a person injured by accident or wrongful act. Under those provisions a lien may be placed on damages recovered or to be recovered by judgment, settlement, or compromise, if notice of the amount claimed has first been given to any person known to be liable to the injured person and to any known insurance carrier of the person liable. Civil Code section 3045.4 provides that unless the entity given notice pays to the claimant as much of the amount of the lien as can be paid out of 50 percent of the damages recovered, that entity is responsible for the full amount of the lien. There is no suggestion in the language of that section that the injured party's attorney fees be apportioned.

[12]Welfare and Institutions Code section 14124.72, subdivision (d), which governs actions against third parties who are liable for injuries to a Medi-Cal recipient, provides that if the Medi-Cal beneficiary brings the action alone "and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the amount of the medical expenditures for the benefit of the beneficiary less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the expenditures to the full amount of the judgment, award, or settlement."

[13]At the time this action was filed, Welfare and Institutions Code section 14124.791, subdivision (c) provided: "The provider's claim for reimbursement for unpaid charges for services rendered to the beneficiary shall be limited to the amount of unpaid charges less 25 percent, which represents the provider's reasonable share of attorneys' fees for prosecution of the action and that portion of the cost of litigation expenses determined by multiplying the expenses by the ratio of the full amount of the unpaid charges to the full amount of the judgment, award, or settlement."

When former section 14117 of the Welfare and Institutions Code was adopted in 1967, it provided that the right of action against a third party for the cost of Medi-Cal benefits provided to an injured beneficiary abated if the beneficiary sued the third party, and continued as a lien against the recovery, if any, in the beneficiary's action. It included no provision for apportionment of attorney fees. That section was repealed and reenacted in 1969. In place of the abatement and lien provision it stated: "In enforcing such right, the director may commence and prosecute actions, file liens, or intervene in court proceedings all in the same manner, with the same rights and authority . . . and to the same extent provided in Chapter 5 (commencing with Section 3850), Part 1, division 4 of the Labor Code for an employer or workmen's compensation insurer where payments have been made or a liability incurred by an employer or an insurer under the workmen's compensation laws." (Stats. 1969, ch. 1420, § 2, p. 2910.) Labor Code section 3856, subdivisions (b) and (c), included express provisions for payment of attorney fees from damages recovered by an employee in an action prosecuted by the employee or the employee and employer for the benefit of both against a third party responsible for an injury for which workers' compensation benefits were paid or payable.

Finally, in 1976, Welfare and Institutions Code section 14117 was repealed and reenacted as Welfare and Institutions Code sections 14124.70-14124.79. (Stats. 1976, ch. 621, §§ 1, 2, p. 1474.) That change also added the express provision for apportionment of attorney fees to subdivision (d) of Welfare and Institutions Code section 14124.72. In 1985, the Legislature added an express apportionment provision to Welfare and Institutions Code section 14124.791. (Stats. 1985, ch. 776, § 5, p. 2525.) Had the Legislature understood the common fund principle to apply to debtor relationships covered by those statutes, the express attorney fee provisions would have been unnecessary.

The statutory distinctions made by the Legislature here are not unlike those we considered when a similar claim for apportionment of attorney fees was made in *Dodds* v. *Stellar, supra,* 30 Cal.2d 496. There a workers' compensation insurance carrier placed a lien on an injured employee's third party tort recovery. The employee argued that the amount of reimbursement to the carrier for benefits provided should be reduced by a proportionate amount of attorney fees. The employee urged a common fund argument similar to that made by defendants here. Under the statutory scheme then in effect the Legislature had given insurance carriers the options of bringing an independent suit against a negligent third party whose conduct caused compensable injury to an employee of the insured, of joining in the employee's suit, or of claiming a first lien against the judgment in that suit for the

amount of the insurer's expenditure for compensation. If the insurer pursued its own action it was required to pay an amount recovered in excess of its expenditure to the employee, but it was allowed to retain from that sum its reasonable attorney fees. After reviewing this statutory scheme we concluded that to apportion the employee's attorney fees when the insurer claimed a lien in the employee's third party suit would nullify the clear legislative intent that the insurer obtain full reimbursement of its expenditure for compensation. (30 Cal.2d at p. 505.)

Here, too, the Legislature has indicated that the lien claimant, the county, recover the full cost of the services it has provided. The omission of any provision for apportionment in section 23004.1 reflects a conscious decision by the Legislature to allow apportionment of attorney fees when the Director of Health Services seeks reimbursement of Medi-Cal payments or a provider of services to a Medi-Cal beneficiary seeks payment of unpaid charges out of damages recovered from a third party who is liable for the injury for which the costs were incurred, but not when county funds have been expended for hospital care. The legislative scheme does not, as the Court of Appeal reasoned, reflect simply legislative silence as to apportionment in section 23004.1.

To the extent that legislative intent and understanding of the common fund doctrine can be gleaned from the statutory scheme governing reimbursement of public expenditures for medical care, the statutes and their history lead us to conclude that the Legislature did not consider recovery of damages and payment of debts of this type to be within the common fund doctrine. Rather, the Legislature was cognizant that if apportionment was to be authorized, an express statutory authorization was necessary. Because no such authorization has been added to section 23004.1, the Legislature intends that county hospitals continue to have the right to collect the full amount of unpaid charges from patients who sue the person responsible for the injury for which treatment was provided. This right is not affected by the abatement and lien provisions of section 23004.1. The only statutory authorization for reduction of the debt is that found in section 23004.2, which gives the county the power to waive its claim in whole or in part if collection would result in undue hardship on the injured person.

We agree therefore that *Lindsey* correctly held that a county hospital that has a lien on a patient's recovery from the third party who caused the injuries for which the hospital provided treatment may not be required to share proportionately in the plaintiff's attorney fees. Because the lien secures a debt owed by the patient, and that debt may be recovered in full from any

assets the patient may acquire, the common fund theory is inapplicable. It is irrelevant that the recovery is secured by a lien on the patient's third party tort recovery.

Inasmuch as the intent of the Legislature appears to be that any reduction of a county lien claim for hospital treatment and related services are at the discretion of the county, the court may not order apportionment of attorney fees when the third party litigation leads to a money judgment from which the lien may be satisfied.

### III

### *Disposition*

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.