104 Cal.Rptr.2d 477 (2001)
87 Cal.App.4th 378
Dan ESBERG, Plaintiff and Appellant,
v.
UNION OIL COMPANY OF CALIFORNIA, Defendant and Appellant,
Jeff Winston et al. Defendants and Respondents.
No. G022069.
Court of Appeal, Fourth District, Division Three.
February 27, 2001.
Review Granted May 16, 2001.
*479 Dale M. Fiola, for Plaintiff and Appellant.
La Follette, Johnson, De Haas, Fesler & Ames, Alfred W. Gerisch, Jr., Dorothy B. Reyes, David J. Ozeran, Michelle M. Wolfe, Los Angeles, and Richard Ettensohn, Brea, for Defendant and Appellant Union Oil Company of California, and Defendants and Respondents Jeff Winston, Walter Aldrich and Paul Jones. *478

*480 OPINION
O'LEARY, J.
This lawsuit arose when Union Oil Company of California (UNOCAL) denied Dan Esberg, an employee then in his mid 50's, educational assistance benefits to pursue a master's degree in business administration. We must decide if UNOCAL's action constitutes unlawful age discrimination under California's Fair Employment and Housing Act (FEHA), Government Code sections 12900 et seq., or violates a fundamental public policy derived from constitutional or statutory law. (All statutory references are to the Government Code unless otherwise stated.) As did the trial court, we conclude an employer is not barred by California law from providing educational benefits to younger workers while denying such benefits to employees over the age of 40.
Section 12940, subdivision (a), the state's anti-discrimination statute relating to virtually every category except age, i.e., "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation," makes it illegal for an employer "to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment." In undeniable contrast, section 12941, subdivision (a) prohibits employers from discriminating on the basis of age only when they hire or employ, "discharge, dismiss, reduce, suspend, or demote" employees. The statute does not mention compensation, terms, conditions or privileges of employment. The difference between the two laws, enacted in tandem, must be the result of clear legislative intent. We find no wiggle room for an interpretation that would overlay the expansive provisions of the former onto the carefully circumscribed language of the latter. (Code Civ.Proc., § 1858 ["In the construction of a statute ..., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted...."].) We may question the wisdom of the law, but we cannot rewrite it. (City and County of San Francisco v. Sweet (1995) 12 Cal.4th 105, 121, 48 Cal.Rptr.2d 42, 906 P.2d 1196 ["When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy"].)
Just as the California Supreme Court decided the Legislature had not extended the public policy against age discrimination in employment to cover all employers, exempting those who do not regularly employ five or more persons (Jennings v. Marralle (1994) 8 Cal.4th 121, 130, 32 Cal. Rptr.2d 275, 876 P.2d 1074), so we find the Legislature has not extended that public policy to embrace all terms, conditions, privileges and benefits of employment. "[Public] policy must be supported by either constitutional or statutory provisions." (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889-890, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) Here, there is no requisite foundation upon which to predicate a common law public policy cause of action. Thus, we affirm the trial court's determination of this question of law. We explain our disposition, post, in our discussion of issues raised in the appeal and cross-appeal.

FACTS
Esberg was hired by UNOCAL as a telecommunications specialist in 1980, when, ironically, he was over the age of 40. All went well for a very long time. But in 1995, he sued UNOCAL and three company supervisors, Walter Aldrich, Jeff Winston and Paul Jones, claiming he was the victim of age discrimination. According to the allegations of the complaint, Winston told Esberg in 1991 that UNOCAL had an educational assistance program encouraging *481 employees to obtain an undergraduate degree and seek post-graduate education. Winston said anyone in his group who did not have a degree needed to obtain one. Therefore, Esberg told his then manager, Nellis Freeman, he wanted to participate in the program. Freeman described the reimbursement procedures and advised Esberg to obtain approval for his education plan. If, as Esberg completed each course, he submitted appropriate verifying documents, UNOCAL would reimburse him for his expenses. Following Freeman's instructions, Esberg enrolled at the University of Redlands (Redlands) and pursued his bachelor's degree. UNOCAL footed the $16,000 bill.
In May 1994, before Esberg had completed his bachelor's program, he and John Marble, another UNOCAL employee who was enrolled at Redlands, discussed their mutual desire to obtain a master's degree. Esberg broached the subject with Aldrich, who commented, "`You are too old to invest in.'" Nonetheless, Esberg obtained the necessary documents from Redlands to enter the M.B.A. program and sent a letter to Aldrich, Winston and Jones, all of whom had authority to approve educational financial assistance. Esberg explained he would soon complete his bachelor's program and wanted financial aid to pursue an advanced degree. In August, Aldrich told Esberg his request had not been approved, giving no reason for the decision. Three younger UNOCAL employees, including Marble, who was 40, received financial aid for a master's program.
Esberg filed a complaint with the Department of Fair Employment and Housing (DFEH). Having received his right-to-sue letter when DFEH closed the case without taking action, he filed his civil complaint, framed in seven causes of action: (1) wrongful denial of benefits, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress (IIED), (4) negligent infliction of emotional distress (NIED), (5) breach of oral contract, (6) misrepresentation, and (7) age discrimination in violation of section 12940 et seq. He sought economic, noneconomic and punitive damages, and attorney's fees under FEHA. (§ 12965, subd. (b).)
After answering, all defendants moved for summary judgment or summary adjudication of issues. The court denied UNCAL's motion in its entirety. However, it found, as a matter of law, Aldrich, Jones and Winston could not be held individually liable for age discrimination based on personnel management decisions. (Janken v. GM Hughes Electronics (1996) 46 Cal. App.4th 55, 53 Cal.Rptr.2d 741.) Accordingly, the court granted summary adjudication of the wrongful denial of benefits and age discrimination causes of action. In addition, it found there was no triable issue of material fact the supervisors had engaged in outrageous conduct as required to maintain the IIED claim, and no evidence of negligence to support the NIED claim. Because Aldrich, Jones and Winston were not named in the contract counts, only the misrepresentation claim against them survived.
That claim was eliminated shortly after trial commenced, when the court granted the individual defendants' motion for nonsuit; UNOCAL later obtained nonsuit on the IIED and NIED claims. (These rulings are not at issue on appeal.) Although it found FEHA does not prohibit an employer from discriminating on the basis of age when providing education benefits, the court denied UNOCAL's motion for nonsuit as to age discrimination. It decided the jury should be allowed to consider whether UNOCAL engaged in certain retaliatory conduct against Esberg for complaining. (That conduct is described more fully in the discussion, post.) As for the wrongful denial of benefits claim, the court instructed the jury it could find in Esberg's favor if it decided the denial violated public policy. Finally, based on the evidence adduced at trial, it determined Esberg's oral contract claim was actually for breach of an implied-in-fact contract.
*482 The jury, by special verdict, found: UNOCAL wrongfully denied Esberg education benefits due to his age; there was an agreement between UNOCAL and Esberg that the employer would not discriminate against an employee because of age; UNOCAL breached this agreement, as well as the covenant of good faith and fair dealing; and UNOCAL did not retaliate against Esberg for opposing age discrimination. It awarded Esberg $35,000 in noneconomic damages and $51,000 in economic damages, but denied him punitive damages, finding no clear and convincing evidence of oppression or malice.
Judgment was entered on the special verdict in favor of Esberg against UNCAL, and in favor of the individual defendants against Esberg. (The parties submitted their respective cost bills, and Esberg sought attorney fees based on FEHA, The details of these posttrial proceedings are included in our discussion of the related legal issues, post.)
Moving for judgment notwithstanding the verdict (JNOV), UNOCAL contended the court had erroneously allowed the jury to consider a common law public policy tort cause of action for wrongful denial of benefits. The court agreed and granted JNOV in that respect. Because Esberg prevailed only on contract claims which would not support noneconomic damages, the jury's award of $35,000 was set aside.

DISCUSSION
In hie appeal, Esberg asks us to do the following: Reverse the JNOV and reinstate the jury's judgment on the public policy violation claim; correct the special verdict by reinstating an age discrimination claim under the FEHA statutes; reverse the order granting summary adjudication in favor of the individual defendants on the IIED and NIED causes of action and remand for trial of those claims; reverse the order denying Esberg attorney fees and remand for determination of reasonable fees under FEHA; and order the trial court to strike the individual defendants' memorandum of costs until they prove they, not UNOCAL, incurred those costs. Esberg is not entitled to any relief.
In its cross-appeal, UNOCAL attacks the sufficiency of the evidence to support the jury's award of $51,000 in economic damages, although it concedes at least some of that amount is warranted. It further contends part of the award is illegitimate because it is based on issues outside the scope of the pleadings. Finally, it asserts there is no substantial evidence to support the jury's verdict that UNOCAL breached its contract by discriminating against Esberg on the basis of his age. The cross-appeal is meritless.

I
Esberg's appeal raises two employment discrimination issues: Does state law prohibit an employer from age discrimination in the conditions, terms, benefits and privileges of employment? Does such discrimination violate a fundamental public policy so as to constitute a common law tort? Both are questions of law, the first involving interpretation of a statute, the second relating to the legal basis of liability. (See Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888, 264 Cal.Rptr. 139, 782 P.2d 278.) "[W]e independently determine the proper interpretation of [a] statute.... [W]e are not bound by evidence on the question presented below or by the lower court's interpretation." (Burden v. Snowden (1992) 2 Cal.4th 556, 562, 7 Cal.Rptr.2d 531, 828 P.2d 672.)

Age Discrimination in Employment under FEHA
Statutory causes of action for unlawful discrimination in employment are governed primarily by sections 12940 and 12941. The two statutes were enacted together in 1980. In pertinent part, section 12940, subdivision (a) states that, in the absence of certain exceptions, it is unlawful "[f]or an employer, because of the race, *483 religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."
Age is conspicuously absent from the class-category list of section 12940. It is in a category by itself under section 12941. In pertinent part, that statute provides, "It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." (§ 12941, subd. (a).) Unlike its companion statute for all other discrimination categories, section 12941 does not make it unlawful for an employer to "refuse to select the person for a training program leading to employment, or to bar or to discharge the person ... from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a), italics added.)
Well-established principles of statutory construction guide our analysis and compel our conclusion UNOCAL's denial of financial assistance to Esberg to pursue his master's degree did not violate the statutory prohibition against age discrimination.
"We begin with the fundamental rule that our primary task in construing a statute is to determine the Legislature's intent. [Citation.] `[We] ... tur[n] first to the words themselves for the answer.' [Citations.]" (Brown v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 724, 257 Cal.Rptr. 708, 771 P.2d 406.) We are mindful that "`when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' [Citations.]" (Id. at p. 725, 257 Cal.Rptr. 708, 771 P.2d 406.) "`"Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed."'" (Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d 491, 507, 247 Cal.Rptr. 362, 754 P.2d 708 [comparing parallel statutes, one modeled on the other, but containing a material change].) Finally, as another panel of this court put it, somewhat more idiomatically, "[W]hen push comes to shove, inescapably plain text should prevail." (J.A. Jones Construction Co. v. Superior Court (1994) 27 Cal.App.4th 1568, 1575, 33 Cal.Rptr.2d 206.)
We find the language of section 12941, set against the language of its sibling statute, inescapably plain. Like section 12940, it prohibits discrimination in hiring and firing practices and in employment decisions involving suspending or demoting an employee. Unlike section 12940, it does not prohibit discrimination in selecting a person for, or discharging him or her from, a training program leading to employment, nor does it prohibit discrimination "in terms, conditions, or privileges of employment." (§ 12940, subd. (a).) Section 12940 has been amended time and again since its enactment, most recently in 2000. Section 12941 has remained unaltered for 20 years. "`The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' [Citations.]" (Estate of McDill (1975) 14 Cal.3d 831, 837-838, 122 Cal.Rptr. 754, 537 P.2d 874 .)
Esberg does not concede section 12941 is clear. He argues the statute is ambiguous because it fails to mention terms, conditions, benefits and privileges of employment. *484 He contends the court should, in essence, insert those terms in order to accomplish the broad purpose of FEHA, as stated in sections 12920 and 12921. We are not persuaded. The former declares the "public policy of this state that it is necessary to protect and safeguard the right and opportunity of all person to seek, obtain, and hold employment without discrimination or abridgement on account of membership in group categories, including age. (§ 12920.) The latter recognizes and declares the civil rights of members of specified categories, including age, to have "[t]he opportunity to seek, obtain and hold employment without discrimination ...." (§ 12921, subd. (a).) Both statutes employ the phrase, "seek, obtain and hold employment;" neither uses the phrase, "terms, conditions and benefits." We discern no unspoken, but implied, legislative intent in section 12941 to compel employers to dispense education finance benefits regardless of an employee's age. Perhaps the Legislature found it inadvisable to compel an employer who wished to provide special training programs or free college and postgraduate education to its 20- or 30-something workers to also extend those privileges to employees in their 40's, 50's, 60's and beyond. Obvious economic factors the cost of training and education programs versus the long-term investment return to the employermay well have been considered when the lawmakers chose to put age in a class by itself.
Further, we are unconvinced by Esberg's contention that a legislative intent to prohibit the subject discrimination can be ascertained in Unemployment Insurance Code sections 2070 and 2073. The first statute simply expresses the state's public policy that older workers seeking to obtain or hold employment "should be judged fairly and without resort to rigid and unsound rules that operate to disqualify significant portions of the population from gainful and useful employment." (Unemp.Ins.Code, § 2070.) The second states that job counseling, placement services and employment programs should be developed for older workers, to safeguard their "right and opportunity ... to seek, obtain, and hold employment without discrimination or abridgement on account of age ...." (Unemp.Ins.Code, § 2073.) Neither statute advances Esberg's position that employers must provide educational financial aid without taking age into account. Furthermore, Unemployment Insurance Code section 2078 undercuts that proposition: It provides that age limitations in apprenticeship programs "shall not be considered discriminatory...." (Unemp.Ins.Code, § 2078, italics added.) If older workers can be excluded from apprenticeship programs available to younger workers, it stands to reason employers need not provide equal opportunities for advanced degree studies to young and old employees alike. Furthermore, insofar as Esberg suggests the statutory phrase "hold employment" really means "hold employment under the same terms and conditions," we find no justification for the embellishment. The plain meaning of "hold" in the context under scrutiny is job security, not a guarantee of advancement. (See American Heritage Diet. (2nd college ed.1982) p. 616 ["To have and keep in one's grasp"].)
Esberg continues, arguing section 12941 must be interpreted in light of regulations of the Fair Employment and Housing Commission (FEHC). He points to the general policy and purpose that "[e]mployment practices should treat all individuals equally, evaluating each on the basis of individual skills, knowledge and abilities and not on the basis of characteristics generally attributable to a group enumerated in the Act." (Cal.Code Regs., tit. 2, § 7286.3) Employment practice is defined in the regulations as "[a]ny act, omission, policy or decision of an employer or other covered entity affecting any of an individual's employment benefits or consideration for an employment benefit." (Cal.Code Regs., tit. 2, § 7286.5(g).) Esberg notes that under the regulations, "[d]iscrimination *485 on the basis of age may be established by showing that a job applicant's or employee's age over forty was considered in the denial of an employment benefit." (Cal.Code Regs., tit. 2, § 7295.2(a).) Employment benefits are "any benefit of employment covered by the Act, including hiring, employment, promotion, selection for training programs leading to employment or promotions, freedom from ... discharge from employment or a training program, compensation, provision of a discrimination-free workplace, and any other favorable term, condition or privilege of employment." (Cal.Code Regs, tit. 2, § 7286.5(f).)
The scope of the regulations is indeed broad, and Esberg's argument would be of more than academic interest were it advanced in the context of an ambiguous statute requiring resort to legislative history or to its construction and implementation by an administrative agency. (See, e.g., Robinson v. Fair Employment & Housing Com. (1992) 2 Cal.4th 226, 234, 5 Cal.Rptr.2d 782, 825 P.2d 767 [where statutory term is subject to more than one interpretation, court will look to such outside sources to discern the Legislature's intent].) However, as we have explained, we do not find section 12941 ambiguous. "When [statutory] language is clear and unambiguous, there is no need for construction" or utilization of "extrinsic aids...." (People v. Rackley (1995) 33 Cal. App.4th 1659, 1666, 40 Cal.Rptr.2d 49.)
Additionally, to the extent administrative regulations purport to enlarge or alter the terms of a legislative enactment or are inconsistent with the statute from which they deriveas they appear to be in some respects herethey are invalid or ineffective. (Robinson v. Fair Employment & Housing Com., supra, 2 Cal.4th at pp. 243-244, 5 Cal.Rptr.2d 782, 825 P.2d 767 ["`Whenever ... a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute'"]; see also Whitcomb Hotel, Inc. v. Cal. Emp. Com. (1944) 24 Cal.2d 753, 757, 151 P.2d 233.) Finally, when all is said and done, "`[t]he ultimate interpretation of a statute is ... an exercise of judicial power and it is the responsibility of the courts to declare its true meaning even if it requires rejection of an earlier erroneous administrative interpretation. [Citations.]' [Citations.]" (Wheeler v. Board of Administration (1979) 25 Cal.3d 600, 605, 159 Cal. Rptr. 336, 601 P.2d 568.)
Taking a different tack, Esberg urges us to construe California's age discrimination statute in accordance with federal cases interpreting federal legislation on the same subject. We will not. The Age Discrimination in Employment Act (ADEA), which predates FEHA, specifically includes a prohibition against age discrimination in the terms, conditions and privileges of employment. (29 U.S.C. § 623(a).) Section 12941 does not include that prohibition. As stated in Page v. Superior Court, (1995) 31 Cal.App.4th 1206, 1215-1216, 37 Cal.Rptr.2d 529, "While as a general rule California courts have looked to federal decisions under title VII for assistance in interpreting FEHA "where appropriate' [citations], it is not appropriate to follow federal decisions where the distinct language of FEHA evidences a legislative intent different from that of Congress." For this reason, the plethora of federal cases cited by Esberg are inapt and need no discussion.
We conclude UNOCAL, in refusing to pay the costs of Esberg's master's degree because he was "too old to invest in," did not violate the statutory prohibition against employment age discrimination. We might have written the law differently, but "[w]hen the Legislature has spoken, the court is not free to substitute its judgment as to the better policy. We are obliged to carry out the intent of the *486 Legislature if it can be ascertained." (City and County of San Francisco v. Sweet, supra, 12 Cal.4th at p. 121, 48 Cal. Rptr.2d 42, 906 P.2d 1196.)
Because the trial court properly eliminated Esberg's FEHA claim, it also correctly decided he was not entitled to attorney fees under FEHA, section 12965, subdivision (b), which gives the court discretion to award the prevailing party attorney fees. There being no other basis for an award of fees, we need say no more.

Age Discrimination and Fundamental Public Policy
The trial court granted JNOV to UNOCAL after finding the jury should not have been permitted to decide the denial of educational benefits violated fundamental public policy. Reasoning section 12940, subdivision (a) "conspicuously fail[ed] to provide a remedy for age-based discrimination in the terms and conditions of employment," the court determined "it would be anomalous to allow the public policy claim to survive." The court was right.
Fundamental public policy must be delineated in either a constitutional or statutory provision. (Stevenson v. Superior Court, supra, 16 Cal.4th at p. 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) "A requirement that a policy be `delineated' entails more specificity than merely being `derived from' or `based' on its source. To `delineate' means `... to describe in detail, esp. with sharpness or vividness' [citation]; `... to describe, portray, or set forth with accuracy or in detail' [citation]. Although one should not assume that the employer's precise act ... must be specifically prohibited for the public policy exception to apply, a constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." (Sequoia Ins. Co. v. Superior Court (1993) 13 Cal. App.4th 1472, 1480, 16 Cal.Rptr.2d 888, original italics, fn. omitted.)
We find no policy against age discrimination in employment benefits delineated in the state's constitution or statutes. Age is not included as a class in section 12940, which makes discrimination in terms, conditions and benefits of employment unlawful with respect to 11 other classes. And section 12941, dealing only with the age class, does not make such discrimination unlawful. It does not even mention, much less sufficiently describe, the type of prohibited conduct that would allow an employer such as UNOCAL to discern a fundamental public policy against refusing to fund advanced degrees for employees over the age of 40. Nor does that public policy emerge, as Esberg suggests, from Unemployment Insurance Code sections 2070 et seq., which we have already parsed in connection with the statutory discussion, ante.
Esberg contends our Supreme Court determined, in Stevenson v. Superior Court, supra, 16 Cal.4th 880, 66 Cal.Rptr.2d 888, 941 P.2d 1157, that age discrimination in the terms and conditions of employment contravenes public policy as declared in section 12920. We do not read the opinion so expansively. The court held plaintiff had established the requisite criteria to maintain a common law public policy claim for age discriminatory wrongful discharge: Specifically, it found the policy against age-based discharge "has been articulated in a statute (the FEHA), benefits society at large, is `substantial' and `fundamental,' and was well established at the time of the discharge here." (Id. at p. 885, 66 Cal. Rptr.2d 888, 941 P.2d 1157.)
Stevenson only serves to highlight the problem with Esberg's argument. The substantial or fundamental policy against age-based hiring and firing or wrongful discharge, is stated at several places in FEHA, (§§ 12920 [right to "seek, obtain and hold employment"] italics added; 12921 [same]; 12940, subd. (a) [illegal to "refuse to hire or employ ... or to bar or discharge ... from employment"]; & 12941, subd. (a) [illegal to "discharge, dismiss, *487 reduce, suspend, or demote"]; as well as in Unemp. Ins.Code, § 2070 [prohibiting "arbitrary and unreasonable rules which bar or terminate employment on the grounds of age"].) In contrast, the public policy regarding terms, conditions and benefits of employment is stated in section 12940, which excludes age from its otherwise all-inclusive listing of classes. Where the Legislature has not seen fit to enact a law or declare a public policy against age discrimination in the terms, conditions and benefits of employment, such as financial assistance for education, this court cannot find such discrimination gives rise to a common law cause of action for violation of public policy.
Moreover, the other criteria listed in Stevenson for establishing a public policy tort, i.e., the policy benefits society at large, is substantial and fundamental and was well established at the time of the conduct (Stevenson v. Superior Court, supra, 16 Cal.4th at p. 885, 66 Cal.Rptr.2d 888, 941 P.2d 1157), are lacking here. It is beyond cavil society reaps benefits from full utilization of human resources in the work force (id. at p. 895, 66 Cal.Rptr.2d 888, 941 P.2d 1157), but it is difficult to see how mandated equal distribution of corporate funds for gratuitous educational benefits yields positive consequences for the public at large. Moreover, although the policy against discriminatory discharge was well establishedStevenson notes "the statutory predecessors of [FEHA's] age discrimination provisions had previously been in effect continuously since 1961" (ibid.), none of those statutes made it unlawful to discriminate on the basis of age in compensation, terms, conditions or privileges of employment. And finally, while the policy against wrongful discharge of older employees is indisputably substantial, as evidenced by its mention in the statutes enumerated, ante, there is no such substantial policy regarding denying older employees all-expense-paid college and graduate educations during their job tenure. Esberg complains the effect of inequality in educational opportunities means the older worker becomes less qualified to compete for promotions or move into new fields. He needs to address this concern to the Legislature.
We have found no California case, and apparently Esberg has found none either, suggesting older workers have a common law tort cause of action for comparable employer decisions about distribution of other company perks and benefits. Much as we sympathize with Esberg for having to pay his own post-graduate expenses when the like expenses of three co-workers were paid by UNOCAL, we find no solid ground upon which to establish a precedent that would take the decision out of the employer's hands.

II
The trial court granted the motions of the individual defendants for summary adjudication of the causes of action for wrongful denial of benefits, age discrimination, IIED and NIED. We find that order correct.
During the pendency of this appeal, our Supreme Court, in Reno v. Baird (1998) 18 Cal.4th 640, 76 Cal. Rptr.2d 499, 957 P.2d 1333, decided that employment management personnel cannot be held individually liable for discrimination under FEHA or common law public policy. (Id. at p. 643, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Faced with the undeniable demise of his two discrimination claims, Esberg now argues the conduct of Aldrich, Jones and Winston constituted harassment in violation of section 12940, subdivision (h)(1) (which does include the age category), or retaliation, thus the supervisors may be held personally accountable for their actions. Inter alia, after he requested financial assistance, they placed him on probation before denying his financial aid application, but never completed the probation process; they excluded him from Winston's telecommunications staff meetings; they did not invite him to vendor product presentation meetings which *488 would have been beneficial to him in his work; they failed to get back to him with information as to how he could climb up the "technical ladder"; and they denied his request for special training as a supervisor.
The jury found these acts did not constitute retaliation, and Esberg has not appealed from the judgment in that respect, so no issue of retaliation survives. Nor do the actions constitute harassment under FEHA: They were undertaken within the realm of the supervisors' personnel management authority. Janken v. GM Hughes Electronics, supra, 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 should suffice to prove the point. In Janken, "the defendants collectively or individually downgraded or altered plaintiffs' performance appraisals; demoted, terminated or laid off plaintiffs; failed to promote or failed to transfer plaintiffs; failed to provide plaintiffs with salaries commensurate with their qualifications, experience and responsibilities; placed a `cap' on salaries of long-term employees such as plaintiffs; sent plaintiffs `at risk' notifications warning of possibly impending layoffs, or at other times failed to send `at risk' notifications warning of possibly impending layoffs; failed to provide plaintiffs with work assignments; failed to provide plaintiffs with sufficient clerical or secretarial support; failed to respond to correspondence sent by plaintiffs to `senior Hughes management'; `accused' one plaintiff of not properly maintaining a time card; and similar claims." (Id. at p. 79, 53 Cal.Rptr.2d 741.) Finding those facts did not amount to harassment, the court stated, "All the actions ... are within the realm of properly delegated personnel management authority." (Ibid.) Our Supreme Court cited this conclusion with approval in (Reno v. Baird supra, 18 Cal.4th at pp. 645-647, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)
Because the activities of Aldrich, Jones and Winston were not outside the performance of their properly delegated management authority, the only conduct upon which to base any tort claim, including IIED and NIED, is Aldrich's "`stray' ageist remark" (Horn v. Cushman & Wakefield Western, Inc. (1999) 72 Cal. App.4th 798, 809, 85 Cal.Rptr.2d 459) that Esberg was "too old to invest in." As a matter of law, that remark does not qualify as the type of outrageous conduct, beyond the bounds of human decency, which is essential to support an IIED claim. (Janken v. GM Hughes Electronics, supra, 46 Cal.App.4th at p. 80, 53 Cal.Rptr.2d 741.) As for the NIED cause of action, the trial court correctly observed there was no evidence of negligence.

III
The final issue in Esberg's appeal concerns costs. At the conclusion of trial, Aldrich, Jones and Winston, who prevailed against Esberg, filed a memorandum of costs requesting $6,280.11. Esberg moved to tax costs, arguing the UNOCAL employees were represented by UNOCAL's counsel, therefore they had not personally incurred any litigation expenses. He contended the court, under equitable principles, should assign the costs to UNOCAL so Esberg could recover "his full costs in prevailing against" the employer. The court, reducing the cost bill to $4,017.17, told the parties it had "carved this up and made its own allocation." Disagreeing with Esberg's contention UNOCAL had incurred all the costs, it stated, "Well, I think [the individuals] did incur costs. The fact that they were advanced by their employer, I think, is really not relevant. And ... it's because they shared counsel that the Court has allocated the claim of those costs and reduced the total costs that are being claimed. [¶] So that's ... the ruling. It's ... sort of playing Solomon a little bit to allocate these costs; but basing it on the percentage of the number of defendants represented seemed to be the best way to do it, to the extent [the costs] otherwise couldn't be specifically identified for a party."
*489 On appeal, Esberg can point to neither evidence nor authority which would undermine the propriety of the court's exercise of discretion in this matter. Three of the four defendants were prevailing parties in Esberg's action. (Code Civ.Proc., § 1032, subd.(a)(4).) The court allowed those defendants to recover only 75 percent of the costs they claimed, allocating the remaining 25 percent to UNOCAL. That seems fair enough. It certainly withstands review under the abuse of discretion standard. "`To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice.' [Citation.]" (San Bernardino City Unified School Dist. v. Superior Court (1987) 190 Cal.App.3d 233, 241, 235 Cal. Rptr. 356.)

IV
In its cross-appeal, UNOCAL contends the jury's award of $51,000 in economic damages was excessive. In a nutshell, Esberg claimed economic damages on two breach of contract theories: (1) As a result of the employer's breach of its implied-in-fact agreement not to discriminate on the basis of age in paying education expenses, Esberg had to spend between $18,000 and $23,000 to obtain his master's degree; and (2) UNOCAL's breach of a separate agreement to pay benefits under its termination allowance plan resulted in Esberg being deprived of approximately $42,000 when he left UNCAL. The jury did not specify the basis for its $51,000 award.
UNOCAL, seeking to reduce the award to $18,000, attacks the legitimacy of the remainder on two fronts: There was insufficient evidence to establish a breach of contract with regard to the termination allowance plan, and the entire controversy about the termination benefits was outside the scope of the pleadings. We do not address the merits of either argument. The issue of excessive damages cannot be raised for the first time on appeal: It must be presented to the trial court on a motion for new trial. (Schroeder v. Auto Driveway Co. (1974) 11 Cal.3d 908, 918, 114 Cal.Rptr. 622, 523 P.2d 662.)
UNOCAL acknowledges the rule, but, citing Christiansen v. Roddy (1986) 186 Cal.App.3d 780, 789, 231 Cal.Rptr. 72, argues a motion for new trial was not required here because the issue involves the utilization of an improper measure of damages. Wrong. The jury was neither instructed to utilize an improper measure of damages, e.g., an "out of pocket" versus a "benefit of the bargain" measure (id. at p. 790, 231 Cal.Rptr. 72), nor did it do so. Its award was based on the evidence and instructions regarding UNOCAL's denial of benefits under both the educational assistance program and the termination allowance plan. Having failed to move for new trial, UNOCAL cannot now complain the award was excessive.

V
UNOCAL's only other contention concerns the contract issue. It asserts there is insufficient evidence it denied Esberg educational benefits due to age. It devotes no more than one-half page of its 50 page brief to the issue. We will follow suit.
Although Esberg could not maintain his age discrimination claim under FEHA or common law public policy theories as a matter of law, his burden on the contract theory was simply this: He had to present evidence giving rise to a reasonable inference that UNOCAL, through its statements and practices, impliedly agreed it would pay employee educational costs without respect to age but breached that agreement by denying Esberg's request on the basis of age. (See Hersant v. Department of Social Services (1997) 57 Cal. App.4th 997, 1002-1003, 67 Cal.Rptr.2d 483.)
*490 Esberg presented evidence UNOCAL had a financial assistance program; employees, including Esberg, were urged to pursue undergraduate and post-graduate studies; employees were led to believe that factors such as age were irrelevant to a request for financial aid; when Esberg mentioned his interest in the master's degree program, Aldrich told him he was "too old to invest in"; and three younger coworkers were approved for the same program. This was substantial evidence upon which the jury could decide UNCAL breached its contractual duty.

DISPOSITION
The judgment is affirmed. Esberg's request for attorney fees under FEHA is denied. Respondents shall recover their costs on appeal.
SILLS, P.J., and BEDSWORTH, J., concur.